IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ROBERT DAVIS                                                    PLAINTIFF

vs.                              NO.: 4-07-CV-00521-BSM

UNION PACIFIC RAILROAD COMPANY                                 DEFENDANT

BRIEF IN SUPPORT OF UNION PACIFIC'S
MOTION FOR SUMMARY JUDGMENT

I.     INTRODUCTION

On May 25, 2007, Plaintiff Robert Davis filed a Complaint against Union Pacific under the Federal Employers' Liability Act ("FELA"), alleging that he injured his left ankle and knee because Union Pacific "failed to use appropriately sized and secure ballast." *See* Plaintiff's Complaint at ¶¶ 7-8 (Docket No. 1); *see also* Exhibit A (Plaintiff's Answer to Interrogatory No. 14), Exhibit B (Plaintiff's injury report), and Exhibit C at 173-77 (Plaintiff's Deposition).  In particular, he claims that the ballast (i.e. the rocks) size was too big.  Ballast consists of crushed rock and other materials, and it supports the track structure and provides drainage.  Ballast is regulated by the Federal Railroad Administration ("FRA") pursuant to the Federal Rail Safety Act ("FRSA").  Section 213.103 of the FRA's Track Safety Standards governs the minimum requirements of ballast.  The purpose of ballast is to transmit and distribute the load of trains, restrain the track, drain the track, and "maintain proper track crosslevel, surface and alignment."  49 C.F.R. § 213.103.  There are no requirements regarding the size of ballast.  Because the FRA's regulation on ballast subsumes the field, Plaintiff's FELA claim is precluded, and Union Pacific is entitled to summary judgment as a matter of law.

II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir.

1

1987); Fed. R. Civ. P. 56. The moving party bears the initial burden of establishing a *prima facie* case in support of summary judgment. *See Firemen's Fund Insurance Co. v. Thien*, 8 F.3d 1307 (8th Cir. 1993). If the moving party successfully establishes a *prima facie* case, the burden then shifts to the nonmoving party to show a genuine issue of fact for trial. *Id.* The burden shifts to the non-moving party when the moving party has submitted a "properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"A genuine issue of material fact exists if (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *Id.* at 996 (internal quotations omitted). No genuine issue of material fact exists in this case. Therefore, Union Pacific's Motion for Summary Judgment should be granted.

### III.   PRECLUSION UNDER THE FEDERAL RAILWAY SAFETY ACT

#### A.   The Federal Railway Safety Act, Preemption, and Preclusion.

Congress enacted the FRSA in 1970 "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. In order to achieve these goals, the FRSA grants the Secretary of Transportation broad powers to prescribe rules, regulations, orders, and standards for all areas of railroad safety. 49 U.S.C. § 20106. The FRSA also establishes a policy of national uniformity of laws, regulations, orders, and standards relating to railroad safety. To accomplish uniformity, the FRSA contains an express preemption provision, prohibiting state laws or regulations that impose greater requirements than those adopted by the FRA pursuant to the FRSA. 49 U.S.C. § 20106.

In *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658 (1993), the United States Supreme Court considered FRSA preemption. In *Easterwood*, the plaintiff alleged that CSX negligently operated its locomotive at an excessive rate of speed, causing a collision with a motor vehicle.

Although the plaintiff conceded that CSX's train was operating below the maximum speed set by FRA regulations, the plaintiff still claimed that CSX breached its common law duty to operate the train at a safe and reasonable speed. *Id.* at 673. The Supreme Court held that the plaintiff's claim was preempted because it undermined Congress' goal of national uniformity and because the federal regulation on speed substantially subsumed the subject matter. *Id.* at 664 & 674.

In 2000, the Supreme Court again addressed the issue of FRSA preemption in *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344 (2000). There, the Court applied the *Easterwood* preemption analysis and held that the plaintiff's wrongful death action, alleging that the railroad was negligent in failing to equip the crossing with adequate warning devices, was preempted by the FRSA. *Id.* at 358.

Since Plaintiff is asserting an FELA claim, which is based on federal law, his claim technically cannot be preempted. Preemption applies when a state law conflicts with a federal law. However, Plaintiff's claim is precluded. The defense of preclusion has the same practical result as a preemption defense. The only real difference between the two is that preclusion applies when two federal regulations conflict, such as the situation in this case where the FELA and a regulation promulgated by the FRA are in conflict.

The Seventh Circuit applied the *Shanklin* and *Easterwood* decisions to preclude an FELA claim. *Waymire v. Norfolk & Western Ry. Co.*, 218 F.3d 773, 774 (7th Cir. 2000). The plaintiff in *Waymire* sued the defendant railroad after the train that he was operating struck a vehicle at a grade crossing. The train was traveling below the speed limit imposed by the FRA. Nevertheless, in his FELA action, the plaintiff claimed that the train speed was unsafe. The Seventh Circuit concluded that the FRA speed regulation superseded the FELA because the locomotive was traveling within the FRA's maximum speed limit. *Id.* at 777. The Seventh Circuit explained:

> To treat cases brought under federal law differently from cases brought under state law would defeat FRSA's goal of uniformity. It would deny recovery to the motorist struck by the train, but not to the engineer operating the train. We do not believe that is the result

> envisioned by the statute or by the Supreme Court's decisions. To the extent that FELA, then, is inconsistent with FRSA on the issues of train speed and warning devices at grade crossings, we hold that FRSA supersedes FELA.

*Id.*

As in *Waymire*, the plaintiff in *Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439 (5th Cir. 2001), filed a lawsuit under the FELA against his railroad employer after he was involved in a grade crossing accident. The plaintiff asserted an excessive speed claim even though the train he was operating was traveling below the FRA's speed limit. The trial court dismissed the excessive speed claim. The Fifth Circuit affirmed, concluding that the federal standards regarding train speed would be rendered meaningless and national uniformity would be destroyed if FELA liability could be imposed despite compliance with federal train speed regulations. *Id.* at 443.

This Court has also applied the doctrine of preclusion to an FELA claim. In *Dickerson v. Union Pacific*, 428 F.Supp.2d 909 (E.D. Ark. 2006) (Eisele, J.), the plaintiff alleged that the railroad was liable under the FELA for failing to provide a crashworthy locomotive. The plaintiff argued that the locomotive should have been equipped with safety belts and cushioning inside the cab. This Court ruled that the plaintiff's claim was precluded because there is an FRA regulation that sets forth the requirements for a locomotive cab, and safety belts and cushioning are not contained in the regulation.

Following the reasoning of the *Waymire, Lane,* and *Dickerson* decisions, Plaintiff's claims in this case should be precluded because the FRA has subsumed the field of ballast regulation.

**B.      The FRSA subsumes the field of ballast regulation, and it precludes FELA claims regarding the size of ballast.**

The "FRA has taken under its wing the area of track, the track roadbed, and such related features as ballast, cross ties, switches, and frogs." *Norfolk & Western Ry. Co. v. Burns*, 587 F.Supp. 161, 171 (E.D. Mich. 1984) (stating that a state's attempt to regulate the type of ballast

which must be used to cover an exposed end of a railway tie was preempted).   Pursuant to the FRSA, the Secretary of Transportation exercised his authority in the area of rail and employee safety by adopting rail safety regulations.   43 Fed. Reg. 10583, 10586—10587.   Included among these regulations are the Track Safety Standards, which "prescribe minimum safety requirements for railroad track that is part of the general railroad system of transportation." 49 C.F.R. § 213.1.   In particular, the Track Safety Standards set the minimum <u>and exclusive</u> safety requirements "for roadbed and areas immediately adjacent to the roadbed." 49 C.F.R. § 213.31.   Such areas include ballast.   Specifically, the Track Safety Standards provide:

> §213.103 Ballast; general.
>
> Unless it is otherwise structurally supported, all track shall be supported by material which will---
>
> (a)      Transmit and distribute the load of the track and railroad rolling equipment to the subgrade;
>
> (b)      Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails;
>
> (c)      Provide adequate drainage for the track; and
>
> (d)      Maintain proper track crosslevel, surface, and alignment.

49 C.F.R. § 213.103.[1]

By enacting this regulation, the FRA subsumed the field of ballast regulation, and Union Pacific should not be held to a higher, inconsistent standard.   Although the Eighth Circuit has not yet ruled on the issue, other jurisdictions have confronted claims of improperly sized or large ballast and have held that such claims are precluded by the FRSA.   For example, in *Crabbe v. Consolidated Rail Corp.*, No. 06-12622, 2007 WL 3227584, at *1 (E.D. Mich. Nov. 1, 2007) (attached as Exhibit D), the plaintiff brought an FELA claim alleging that the railroad failed to

---

[1] Plaintiff is not alleging that Union Pacific failed to comply with this regulation.   Rather, Plaintiff is alleging that despite compliance, Union Pacific was negligent in using ballast that was too big.

provide him with a safe place to work by requiring him to walk on oversized ballast.  The railroad

moved for summary judgment on the basis of FRSA preclusion.  The Michigan District Court held

that the FRSA precluded the claim:

> The ballast requirements substantially subsume the subject matter of
> Plaintiff's theory of recovery.  While the regulations offer no specific
> metric for the size, mixture or looseness of the ballast, they do ordain
> particular purposes that the ballast must serve. As a consequence, the
> regulations mandate a limited universe of material that is suitable for
> the listed purposes.
>
> Moreover, the ballast requirements substantially subsume the subject
> matter of Plaintiff's theory of recovery, allowing Plaintiff to proceed
> with this FELA claim alleging that Defendant was negligent in its use
> of improper or oversized ballast would impose a duty greater than that
> of complying with the ballast regulation.  Finally, the FRSA's goal of
> national uniformity could not be achieved "by a broad reading of
> FELA that would lead to different results depending on the vagaries
> of location and other variables posed by individual FELA claims."
> Therefore, the Court concludes that to the extent that Plaintiff's FELA
> claim rests upon Defendant's use of improper or oversized ballast,
> such a claim is precluded.

*Id.* at *4 (citations omitted); *see also Ferra v. Canadian Nat'l/Illinois Cent. R.R.*, 05-72721, 2007

U.S. Dist. LEXIS 88457, at *1 (E.D. Mich. May 4, 2007) (precluding the plaintiff's claim that the

defendant railroad was negligent in using ballast that was too big) (attached as Exhibit E); *Nickels v.*

*Grand Trunk W. R.R.*, No. 06-CV-11846, 2007 U.S. Dist. LEXIS 88481, at *1 (E.D. Mich. May 30,

2007) (holding that the FRA's ballast requirements substantially subsume the subject matter of the

plaintiff's theory of recovery and that the claim was precluded) (attached as Exhibit F); *Cooper v.*

*CSX Trans.*, No. 05-CV-73392 (E.D. Mich. Oct. 23, 2007) (precluding the plaintiff's claim that

ballast in the rail yard was too big) (attached as Exhibit G).

Similarly, in *Norris v. Central Ga. R.R. Co.*, 635 S.E.2d 179 (Ga. App. 2006), the FELA

plaintiff claimed that the railroad was negligent for using mainline ballast (larger rock) instead of

yard ballast (smaller rock).  The trial court granted summary judgment.  In affirming summary

judgment, the appellate court stated:

> To the extent that [the plaintiff's] FELA claim rests upon different ways by which [the railroad] might have supported the mainline track to comply with 49 C.F.R. § 213.103, the negligence claim is precluded.  The fact that the regulation does not specify any size for the various purposes of the ballast does not alter the fact that the regulation nonetheless "covers" or "substantially subsumes" the subject matter of a ballast selection relative to track maintenance.  "To allow various state juries to second-guess the actions of an interstate railroad which has complied with federally-mandated design standards would undermine Congress's goal of uniform, federal railroad regulation."  Contrary to [the plaintiff's] contention, his FELA claim presents nothing for a jury to decide on this issue.

*Id.* (citations omitted).

Here, as in *Crabbe* and *Norris* and the other cited cases, Plaintiff is critical of the size of the ballast near the Service Track in Union Pacific's North Little Rock yard.  *See* Exhibit H (photos of area where Plaintiff alleges he was injured).  But as the foregoing courts recognized, such allegations are precluded.  For this reason, Union Pacific is entitled to summary judgment, and Plaintiff's Complaint should be dismissed as a matter of law.

## IV.    CONCLUSION.

For the foregoing reasons, Union Pacific's Motion for Summary Judgment should be granted.

Respectfully submitted,

SCOTT H. TUCKER, #87176
KRISTOPHER B. KNOX, #2004071
FRIDAY, ELDREDGE & CLARK
400 W. Capitol Avenue, Suite 2000
Little Rock, Arkansas  72201
Telephone:  (501) 376-2011
Fax: (501) 376-2147
tucker@fec.net
kknox@fec.net

*Attorneys for Union Pacific Union Pacific Railroad Company*

/s/ Kristopher B. Knox
KRISTOPHER B. KNOX, #2004071

## CERTIFICATE OF SERVICE

I, Kristopher B. Knox, do hereby certify that on this 5th day of January, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

Nelson G. Wolff
Andrew S. Williams
Julia M. Eades
Schlichter, Bogard & Denton
100 South 4th Street, Suite 900
St. Louis, MO  63102

Edward T. Oglesby
Oglesby Law Firm, P.A.
100 Morgan Keegan Drive, Suite 110
Little Rock, AR  72202

/s/ Kristopher B. Knox
KRISTOPHER B. KNOX, #2004071
FRIDAY, ELDREDGE & CLARK
400 W. Capitol Avenue, Suite 2000
Little Rock, Arkansas  72201
Telephone:  (501) 376-2011
Fax: (501) 376-2147
kknox@fec.net

*11-26-07*

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### LITTLE ROCK DIVISION

**ROBERT DAVIS**                                                                        **PLAINTIFF**

**v.**                                     **CASE NO.:  CV-07-00521**

**UNION PACIFIC RAILROAD COMPANY**                          **DEFENDANT**

## PLAINTIFF'S RESPONSES TO DEFENDANT'S INTERROGATORIES

COMES NOW Plaintiff, Robert Davis, by and through his counsel of record, Schlichter, Bogard & Denton and Oglesby Law Firm, P.A., and for their Responses to Defendant's Interrogatories states as follows:

**INTERROGATORY NO 1**:  Please state each period of railroad and non-railroad employment, including self employment, providing the name of the employer, the starting and termination date, your craft, position, or occupation, the geographical location of your employment, and the full names of your supervisors for the last ten years of your employment.

> **ANSWER:**   **Hired by Southern Pacific April 20, 1977.  See UPRR personnel record.  Maintained a part-time job with Missionary Baptist Church in Little Rock, AR mowing the lawn from 1993 – 2001.**

**INTERROGATORY NO. 2**:  If you have returned to active duty at the railroad since the incident referred to in this lawsuit, please state the first date you returned to work and the name of the person who authorized you to do so; the dates of all active duty since the incident referred to in your Complaint; the type of job you have performed, and whether you worked at full duty or restricted duty; if both, give the dates for each; and if you are not now working active duty for the railroad, please state why you are not so working (i.e., medical leave, furlough, resigned, terminated, new employment).

1



<u>INTERROGATORY NO. 13</u>: Please identify by name, last known address and telephone number and last known place of employment of the following persons:

    (a)    all persons who know of any defective equipment or tools which caused or contributed to the incident which is the subject of this lawsuit;

    (b)    all persons who know of any unsafe conditions at the scene or which caused or contributed to the incident;

    (c)    all persons who made any complaints regarding any of the unsafe conditions, defective equipment or tools which caused or contributed to your injury prior to the time it occurred;

    (d)    all persons who know of any unsafe practices or conditions which caused or contributed to your injuries.

**ANSWER:**    **a) NA**
**b - d)**
<u>**UPRR Employees**</u>
**Tim Polson**
**5612 McMurtrey Dr.**
**North Little Rock, AR**
**501-425-2491**

**Travis Prothro**
**551 Hwy 5 South**
**Rosebud, AR 72137**
**501-593-1661**

**Jason Young (Safety Coordinator at the Service Track)**
**Tim Kelly (Safety Coordinator over North Little Rock)**
**Larry Goode & John Lambe (UPRR Supervisors)**

<u>INTERROGATORY NO. 14</u>: With respect to the incident which is the subject of this lawsuit in which you claim you were injured, please state the date and time of each such incident; the precise location of each such incident; the type of work or other activity in which

6

you were involved at the time and a description of how the incident occurred; the shift you were working at the time of the incident; the identity of the foreman and all co-workers on the shift you were working at the time of the incident; and the identity of all other persons with or near you at the time of the incident.

**ANSWER:    See Plaintiff's Personal Injury Report.**

INTERROGATORY NO. 15: Please state the following with respect to the manner in which you were injured.

    (a)    identify all defective or unsafe equipment, tools, appliances, vehicles or machinery; describe how they were defective or unsafe and how they caused or contributed to your injury;

    (b)    identify all unsafe work areas or other conditions; describe how they were unsafe, and how they caused or contributed to your injury;

    (c)    identify all persons who gave improper orders or followed unsafe work practices; describe how the orders were improper or work practices unsafe, and how they caused or contributed to your injury.

    (d)    identify any person or entity, other than the defendant or its employees, that caused or contributed to your injury.

**ANSWER:    Objection:  Calls for work product and attorney-client information; improper contention interrogatory.  See Complaint.**

INTERROGATORY NO. 16:Please state the amount of any lost earnings as a result of the condition of which you complain in your Complaint, and the period over which you have lost earnings as a result of your condition.

**ANSWER:    Loss is ongoing.  Amount is yet to be determined.**

7

<u>INTERROGATORY NO. 21</u>: Are you now in or have you ever declared bankruptcy? If your answer is yes, please provide the dates, courts, and names of your attorneys.

**ANSWER:   Objection.  Overly broad, harassing and not reasonably calculated to lead to the discovery of admissible evidence.**

<u>INTERROGATORY NO. 22</u>: State specifically and individually each act or condition which you contend constitutes a failure on the part of the defendant to provide a reasonably safe place to work or safe and proper tools and equipment to perform the work assigned; or to adopt and enforce safe customs and practices, or to provide sufficient help, or otherwise constitutes negligence under the FELA law, at the time of the incident alleged.

**ANSWER:   See response to Interrogatory #15.**

Respectfully submitted,

SCHLICHTER, BOGARD & DENTON

NELSON G. WOLFF Fed #37998; Ark #2006002
100 South Fourth Street, Suite 900
St. Louis, Missouri  63102
(314) 621-6115
(314) 621-7151 (fax)

Edward T. Oglesby ABN 89158
Suite 110 Morgan Keegan Bldg.
100 Morgan Keegan Dr.
Little Rock, AR  72202
(501) 664-1000   Fax (501) 644-1012
edward@oglesbylaw.com

ATTORNEYS FOR PLAINTIFF

9

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of November, 2007 a true and correct copy of the above was delivered by United States First Class mail with postage prepaid to the following: Scott H. Tucker, Friday, Eldredge & Clark   400 W. Capitol Avenue, Ste 2000 Little Rock, AR 72201

10

 **NLR**

**UNION PACIFIC RAILROAD**
**REPORT OF PERSONAL INJURY OR OCCUPATIONAL ILLNESS**

0207JE0021

FORM 52032
Rev. 01/04

01022 6

**INSTRUCTIONS:** Answer all questions in each applicable section in your own handwriting as soon as possible after an accident/incident occurs if injured, either on or off duty or if you are reporting a work-related illness. (If unable to complete the report, necessary information must be furnished by the person doing so in the employee's behalf.)

## SECTION I. IDENTIFICATION INFORMATION

| (1) YOUR NAME (First, Middle, Last) | (2) YOUR HOME ADDRESS | (3) CITY | (4) ST | (5) ZIP CODE |
|---|---|---|---|---|
| Robert Wayne Davis | | | AR | |

| (6) YOUR OCCUPATION ON DAY OF INJURY | (7) YOUR HOME PHONE | (8) YOUR AGE | (9) HIRE DATE |
|---|---|---|---|
| FIREMAN + OILER Lomotive Mover | | | |

| (10) YOUR SOCIAL SECURITY NUMBER | (11) YOUR EMPLOYEE ID NUMBER | (12) YOUR SUPERVISORS NAME | (13) ASSIGNED REST DAYS |
|---|---|---|---|
| | | John Lambe | SAT~SUN. |

## SECTION II. DETAILS OF ACCIDENT/INJURY

| (1) DATE OF INJURY | (2) TIME | (3) WHERE WERE YOU INJURED (NEAREST CITY, STATE, RR LOCATION, ETC.)? | (4) TIME SHIFT OR TRIP BEGAN |
|---|---|---|---|
| 2-13-07 | 12:20 ☐AM ☑PM | SERVICE TRACK North Little Rock, AR | 7:00 ☐AM ☑PM |

| (5) MILE POST: | (6) WEATHER: ☐ CLEAR ☐ RAIN ☑ CLOUDY ☐ SLEET | (7) VISIBILITY: ☑ DAYLIGHT ☐ DARK ☐ DAWN |
|---|---|---|
| SUB DIVISION: ☐ MAIN/TRACK ☐ YARD | TEMPERATURE 40° ☐ SNOW ☐ FOG ☐ OTHER | ☐ ARTIFICIAL LIGHTING. ☐ DUSK |

| (8) WERE YOU INJURED: ☑ ON DUTY ☐ OFF DUTY | ☑ ON COMPANY PROPERTY ☐ OFF COMPANY PROPERTY |
|---|---|

(9) SPECIFIC JOB OR ACTIVITY BEING PERFORMED AT TIME OF ACCIDENT/INJURY:
Outside Locomotive Hostling

## SECTION III. DETAILS OF ACCIDENT/INJURY OR OCCUPATIONAL ILLNESS

(1) DESCRIBE FULLY HOW THE ACCIDENT/INJURY OCCURRED:
Walking in Loose Rock  Left Ankle Rolled to my Left side
And I felt a pop in my Left Knee!

(2) WHAT SPECIFICALLY CAUSED THE ACCIDENT/INJURY:
Loose Rock! Very poor walking conditions!

(3) DID EQUIPMENT OR TOOLS CAUSE OR CONTRIBUTE TO THE CAUSE OF THE ACCIDENT/INJURY?  ☐ YES ☑ NO  IF YES, PROVIDE DETAILS (INCLUDING EQUIPMENT ID NUMBER)

(4) DID WORKING CONDITIONS CAUSE OR CONTRIBUTE TO THE CAUSE OF THE ACCIDENT/INJURY?  ☑ YES ☐ NO  IF YES, PROVIDE COMPLETE DETAILS
Need much smaller Rock Around switches and other Areas
where you have to walk A lot!

(5) DID OTHER PERSONS CAUSE OR CONTRIBUTE TO THE CAUSE OF THE ACCIDENT/INJURY?  ☐ YES ☑ NO  IF YES, PROVIDE COMPLETE DETAILS

(6) NAMES, OCCUPATIONS AND ADDRESSES OF ALL CREW MEMBERS AND/OR OTHER PERSONS WHO WITNESSED OR HAVE ANY KNOWLEDGE OF ACCIDENT/INCIDENT:
NONE

**EXHIBIT**
B

## SECTION IV: IF OCCUPATIONAL ILLNESS - PROVIDE ADDITIONAL DETAILS

**(1) WHAT IS YOUR ILLNESS OR CONDITION?**                                          010258 8

**(2) WHEN DID YOU FIRST BECOME AWARE THAT THIS CONDITION MAY HAVE BEEN CAUSED BY YOUR WORK?   HOW DID YOU LEARN THIS?**

**(3) LIST ANY JOB(S), EXPOSURE(S), OR LOCATION(S) THAT YOU BELIEVE MAY HAVE CAUSED OR CONTRIBUTED TO YOUR SYMPTOMS (PLEASE PROVIDE DATES):**

**(4) DO YOU HAVE ANY CURRENT EXPOSURES?  IF SO, PLEASE EXPLAIN:**

## SECTION V: NATURE OF INJURY / OCCUPATIONAL ILLNESS AND TREATMENT

**(1) DESCRIBE INJURY OR ILLNESS:**
SPRAIN to Left Knee And Left Ankle!

**(2) WHAT ARE YOUR SYMPTOMS?**
Pain + Swelling into Left Knee + Ankle!

**(3) WHEN DID YOU FIRST NOTICE SYMPTOMS? (GIVE DATE)**
2-13-07

**(4) WHEN WERE YOU FIRST TREATED OR DIAGNOSED?**
Company Nurse 2-13-07 NLRST!, Baptist Hosp. ER 2-14-07

**(5) PARTS OF BODY AFFECTED**                        SIDE OF BODY ☐ RIGHT ☑ LEFT ☐ BOTH
Left Knee + Ankle!

**(6) WERE YOU EXAMINED BY A MEDICAL PROFESSIONAL? ☑ YES ☐ NO  IF YES, GIVE MEDICAL PROFESSIONAL'S NAME AND ADDRESS:**
James Rice MD  Bapt Health Medical Center  North Little Rock AR 72117

**(7) TREATMENT REQUIRED:** ☐ NONE ☐ FIRST AID ☑ TREATED & RELEASED ☑ X-RAYS ☐ HOSPITALIZED ☐ OTHER (Explain):

IF HOSPITALIZED, NAME AND ADDRESS OF HOSPITAL Bapt. Hosp. ER

**(8) WHAT TREATMENT WAS GIVEN?**
Ice packs to Knee And Iduprofen for pain + swelling!

**(9) MEDICATION INSTRUCTIONS**

WAS A PRESCRIPTION WRITTEN? ☐ YES ☑ NO  IF YES:  MEDICATION _____ DOSAGE _____

IF NO PRESCRIPTIONS WERE WRITTEN, WERE OTHER MEDICATIONS ISSUED OR RECOMMENDED?
☑ YES ☐ NO  IF YES:  MEDICATION Iduprofen 200mg _____ DOSAGE 2 Every 4 hrs

**(10) INDICATE YOUR CURRENT HEALTH CARE COVERAGE PLAN:** ☐ UPREHS ☐ UHC ☑ OTHER LIST:
United HealthCare,

## SECTION VI: EQUIPMENT INVOLVED IN ACCIDENT / INJURY (IF APPLICABLE)

| (1) TRAIN SYMBOL | (2) ENGINE NUMBER | (3) CONSIST (Loads, Empties, Tons) | (4) IDENTIFYING INITIALS & NUMBERS OF EQUIPMENT INVOLVED IN ACCIDENT/INCIDENT |
|---|---|---|---|
| | | | |

**(5) WAS EQUIPMENT ON** ☐ MAINTRACK   TIMETABLE   **(6) WERE THERE ANY DEFECTS IN THE EQUIPMENT?** ☐ YES ☐ NO
☐ YARD   DIRECTION _____

**(7) IF THE ANSWER TO QUESTION 6 IS YES, STATE THE NATURE OF THE DEFECTS, IDENTIFY THE DEFECTIVE EQUIPMENT, AND COMPLETE (8).**

**(8) WERE THE DEFECTIVE CONDITIONS MARKED?** ☐ YES ☐ NO   **(9) DID THIS ACCIDENT/INCIDENT RESULT FROM RIDING ON, BOARDING, OR ALIGHTING FROM, OR BEING STRUCK OR RUN OVER BY MOVING EQUIPMENT?** ☐ YES ☐ NO

**(10) COMMENTS:**

*I certify that the foregoing information is true and correct.*

Robert W. Davis
(Signature of Employee)

2-15-07  (15 Feb 20 07)
(Date Completed)

John F. Lambe
(Signature of Witness)

JOHN F. LAMBE
(Printed Name of Witness)

ORIGINAL   1

1              IN THE UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF ARKANSAS
2                      LITTLE ROCK DIVISION

3    ROBERT DAVIS                )
                 PLAINTIFF,      )
4                                )
     VS.                         )NO. 4-07-CV-00521-BSM
5                                )
     UNION PACIFIC RAILROAD      )
6    COMPANY                     )
                 DEFENDANT.      )
7

8    ─────────────────────────────────────────────

9

10

11

12                   ORAL DEPOSITION OF

13                      ROBERT DAVIS

14                   NOVEMBER 11, 2008

15

16

17

18   ─────────────────────────────────────────────

19

20                   KELLY D. HILL

21                7010 RICHWOOD ROAD

22           LITTLE ROCK, ARKANSAS 72207

23                 (501) 353-2220

24

25   ─────────────────────────────────────────────

                    KELLY D. HILL
               CERTIFIED COURT REPORTER
                    (501) 228-5446



2

1          ANSWERS AND DEPOSITION OF ROBERT DAVIS, a

2    witness produced at the request of the Defendant,

3    was taken by Notice of Videotaped Deposition, and

4    taken in the above-styled and numbered cause on

5    the 11th day of November, 2008, 10:04 a.m.,

6    before Kelly Hill, a Certified Court Reporter,

7    taken at the law offices of Edward Oglesby, 100

8    Morgan Keegan Drive, Suite 100, Little Rock,

9    Arkansas, 72202, in accordance with the Federal

10   Rules of Civil Procedure.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    A.    Repeat that now.

2    Q.    Section I says Identification Information,

3    and it contains your name, your occupation, your

4    employee I.D. number, address and supervisor's

5    name?

6    A.    Yes.

7    Q.    Section II says Details of Accident/Injury,

8    and you wrote service track, North Little Rock,

9    12:20 p.m., date of injury 2/13/07.  You see

10   that?

11   A.    Yes, sir.

12   Q.    And it says under Question 9, specific job or

13   activity being performed at time of

14   accident/injury, and you wrote outside locomotive

15   hosteling, correct?

16   A.    Yes, sir.

17   Q.    Okay.  Then in Section III, it says Details

18   of Accident/Injury or Occupational Illness, do

19   you see that?

20   A.    Yes, sir.

21   Q.    And under Question 1 which asks you to

22   describe fully how the accident/injury occurred,

23   you wrote walking in loose rock, left ankle

24   rolled to my left side, and I felt a pop in my

25   left knee.  Do you see that?

1    A.   Yes, sir.

2    Q.   Under No. 2 -- and is that correct?  I should

3    ask you that.  I mean, as we sit here today,

4    that's what happened?

5    A.   Yes, sir.

6    Q.   Under No. 2, it says what specifically caused

7    the accident/injury, and you wrote loose rock,

8    very poor walking conditions.  Do you see that?

9    A.   Yes, sir.

10   Q.   And then No. 3, did equipment or tools cause

11   or contribute to the cause of the

12   accident/injury, and you checked the no box?

13   A.   Yes, sir.

14   Q.   All right.  Then No. 4 asked if working

15   conditions caused or contributed to the cause of

16   the accident/injury, and you checked yes and

17   wrote, need much smaller rock around switches and

18   other areas where you have to walk a lot,

19   correct?

20   A.   That's correct.

21   Q.   And then No. 6 asks for witnesses, and you

22   wrote none?

23   A.   Yes, sir.

24   Q.   Okay.  And then turning the page, Section IV

25   is about Occupational Illnesses, and since that

1   section is not applicable you left that blank,

2   right?

3   A.   Yes.

4   Q.   Section V, the first question asks you to

5   describe the injury, and you wrote sprained the

6   left knee and left ankle, correct?

7   A.   Yes, sir.

8   Q.   No. 2 says, what are your symptoms, and you

9   wrote pain and swelling to left knee and ankle,

10  right?

11  A.   Yes.

12  Q.   No. 3 asks when you first noticed symptoms,

13  and you wrote the date, 2/13/07?

14  A.   Correct.

15  Q.   No. 4 says, when were you first treated or

16  diagnosed, and you wrote company nurse, 2/13/07,

17  NLRST.   Would that be North Little Rock Service

18  Track?

19  A.   That's correct.

20  Q.   And it says Baptist Hospital ER 2/14/07,

21  right?

22  A.   Correct.

23  Q.   5 asks parts of body affected, and you wrote

24  left knee and ankle?

25  A.   Correct.

1   Q.   6 asks if you were examined by a medical

2   professional, and you checked yes and wrote James

3   Rice, M.D., Baptist Health Medical Center, North

4   Little Rock, Arkansas, correct?

5   A.   That's correct.

6   Q.   Okay.  And you wrote Baptist Hospital under

7   that for 7.  And then on 8 about treatment given,

8   you wrote ice packs for knee and ibuprofen for

9   pain and swelling?

10   A.   Right.

11   Q.   Okay.  And then you signed it at the bottom.

12   Is that your signature?

13   A.   Yes.

14   Q.   And dated it 2/15/07, and then in parenthesis

15   wrote 15, February 2007?

16   A.   Yes.

17   Q.   Is all the information, correct, Mr. Davis,

18   on your 52032 Report of Personal Injury?

19   A.   It appears to be, yes, sir.

20   Q.   All right.  Did you say -- it doesn't have a

21   time on it that you filled this out, does it?

22   A.   I don't see a time.

23   Q.   Okay.  Did you say you think that was in the

24   morning?

25   A.   Yes, the best I can remember.

1    Q.   Okay.   I'm guessing that nobody told you what

2    you had to write on your accident report?

3    A.   No, sir.

4    Q.   Or prevented you from writing anything you

5    wanted to?

6    A.   No, sir.

7    Q.   And I'm sorry.   I'll have to ask you again.

8    Did you say you thought that was sometime in the

9    morning that you filled out the accident report?

10   A.   To the best of my knowledge, yes, sir.

11   Q.   Okay.   What did you do for the rest of the

12   day?

13   A.   Basically nothing.   Just sat around on the

14   clock.

15   Q.   Okay.   Where were you when you were sitting

16   around; were you in the lunchroom, were you in

17   somebody's office?

18   A.   Lunchroom, yes, sir.   I had that leg brace

19   on, so I couldn't do much.

20   Q.   The -- the working conditions that you

21   believe caused or contributed to your accident

22   would be the size of the rocks that were there

23   between pit 3 and the lead?

24   A.   Well, yes, sir, the loose rock and the size

25   of the rock, yes, sir.

## CERTIFICATE

STATE OF ARKANSAS    )
                     )   ss:
COUNTY OF PULASKI     )

I, KELLY HILL, Certified Court Reporter, a notary public in and for the aforesaid county and state, do hereby certify that the witness, **ROBERT DAVIS,** was duly sworn by me prior to the taking of testimony as to the truth of the matters attested to and contained therein; that the testimony of said witness was taken by me stenographically, and was thereafter reduced to typewritten form by me or under my direction and supervision; that the foregoing transcript is a true and accurate record of the testimony given to the best of my understanding and ability.

I FURTHER CERTIFY that I am neither counsel for, related to, nor employed by any of the parties to the action in which this proceeding was taken; and, further, that I am not a relative or employee of any attorney or counsel employed by the parties hereto, nor financially interested, or otherwise, in the outcome of this action; and that I have no contract with the parties, attorneys, or persons with an interest in the action that affects or has a substantial tendency to affect impartiality, that requires me to relinquish control of an original deposition transcript or copies of the transcript before it is certified and delivered to the custodial attorney, or that requires me to provide any service not made available to all parties to the action.

Kelly D. Hill
Certified Court Reporter
State of Arkansas
Certification #515

KELLY D. HILL
NOTARY PUBLIC - ARKANSAS
PULASKI COUNTY
My Commission Expires: AUG. 11, 2017
Commission #: 12361703

KELLY D. HILL
CERTIFIED COURT REPORTER
(501) 228-5446

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 3227584 (E.D.Mich.)
**(Cite as: 2007 WL 3227584 (E.D.Mich.))**

Page 1

**C**Only the Westlaw citation is currently available.
United States District Court, E.D. Michigan, South-
ern Division.
Armid CRABBE, Plaintiff,
v.
CONSOLIDATED RAIL CORPORATION and Nor-
folk Southern Railway Company, Defendants.
No. 06-12622.

Nov. 1, 2007.

Arvin J. Pearlman, Elaine L. Livingway, Pearlman &
Pianin, Southfield, MI, Charles Richard Cranwell,
Cranwell, Moore, Roanoke, VA, for Plaintiff.
Joseph J. McDonnell, Durkin, McDonnell, Detroit,
MI, for Defendants.

*OPINION AND ORDER GRANTING DEFEN-
DANT CONSOLIDATED RAIL CORPORATION'S
MOTION FOR SUMMARY JUDGMENT*

PATRICK J. DUGGAN, United States District
Judge.
*1 On June 14, 2006, Armid Crabbe ("Plaintiff"), a
former car inspector working in Consolidated Rail
Corporation's [FN1] ("Defendant") railyard, brought this
lawsuit pursuant to the Federal Employer's Liability
Act ("FELA"), 45 U.S.C. §§ 51-60, after allegedly
incurring job-related injuries. Plaintiff claims that
Defendant "negligently failed to provide him with a
safe place to work by requiring him to perform his
railcar inspection duties in Defendant's rail yards
while walking on improper or oversized 'ballast' [FN2]
which ultimately led to a serious hip injury."(Pl .'s
Resp. Br. at 1.) Presently before this Court is Defen-
dant's Motion for Summary Judgment. In its motion,
Defendant's sole argument is that Plaintiff's FELA
claim is precluded by the Federal Railway Safety Act
("FRSA") and the regulations promulgated there-
under. Defendant's motion has been fully briefed, and
on October 11, 2007, the Court held a hearing on
Defendant's motion.

FN1. On August 15, 2007, the parties stipu-
lated to the dismissal of Norfolk Southern
Railway Company. (Doc. No. 13.)

FN2."Ballast is a selected, crushed and
grated aggregate material used upon the rail-
road roadbed for the purpose of providing
support for rail and ties; drainage, stability
and uniform distribution of loading from
rolling stock."(Mr. Raymond A. Duffany's
Engineering Report of Expert Opinion
("Pl.'s Expert") § 2.2 (attached as Exhibit 3
to Dft.'s Mot.).)

**I. Standard of Review**

Defendant is moving for summary judgment pursuant
to Rule 56(c) of the Federal Rules of Civil Procedure,
which provides that summary judgment is proper "if
the pleadings, depositions, answers to interrogatories,
and admissions on file, together with the affidavits, if
any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a
judgment as a matter of law."FED. R. CIV. P. 56(c).

**II. Applicable Law and Analysis**

As stated above, one of Plaintiff's FELA negligence
claim alleges that Defendant failed to provide Plain-
tiff a safe place to work by requiring him to perform
his duties as car inspector on improperly sized bal-
last. FELA is a general negligence statute that "pro-
vides the exclusive remedy for a railroad employee
injured as a result of his employer's negligence."
*Lane v. R.A. Sims, Jr., Inc.,* 241 F.3d 439, 442 (5th
Cir.2001); *accord Wabash R.R. Co. v. Hayes,* 234
U.S. 86, 89, 34 S.Ct. 729, 729, 58 L.Ed. 1226
(1914)."To prevail on a FELA claim, a plaintiff must
'prove the traditional common law elements of negli-
gence: duty, breach, foreseeability, and causation."
*Adams v. CSX Transp., Inc.,* 899 F.2d 536, 539 (6th
Cir.1991) (quoting *Robert v. Consol. Rail Corp.,* 832
F.2d 3, 6 (6th Cir.1987)).

In its motion, Defendant contends that Plaintiff's
FELA claim is precluded by the FRSA and the regu-
lations promulgated thereunder. The FRSA was en-
acted in 1970 with the purpose of promoting "safety
in every area of railroad operations and reduc[ing]
railroad-related accidents and incidents."49 U.S.C. §
20101. Moreover, the FRSA contains an express pre-



EXHIBIT
D

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 3227584 (E.D.Mich.)
**(Cite as: 2007 WL 3227584 (E.D.Mich.))**

emption provision and provides that "[l]aws, regulations, and orders related to railroad safety ... shall be nationally uniform to the extent practicable."[FN3]*See id.* § 20106(a)(1). The FRSA grants the Secretary of Transportation the authority to "prescribe regulations and issue orders for every area of railroad safety supplementing laws and regulations in effect [at the time of the FRSA's enactment]."*Id.* § 20103(a). Pursuant to this directive, the Secretary, acting through the Federal Railroad Administration ("FRA"), has promulgated regulations under the FRSA covering track safety standards. *See generally*49 C.F.R. pt. 213. These regulations "prescribe[ ] minimum safety requirements for railroad track that is part of the general railroad system of transportation."49 C.F.R. § 213.1. More specifically, the FRA has issued the following regulation:

> FN3. The FRSA's express preemption provision provides:
>
> A state may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation ... prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation or order related to railroad safety or security when the law, regulation, or order-
>
> (1) is necessary to eliminate or reduce an essentially local safety or security hazard;
>
> (2) is not incompatible with a law, regulation, or order of the United States Government; and
>
> (3) does not unreasonably burden interstate commerce.
>
> 49 U.S.C. § 20106(a)(2).

**\*2 § 213.103 Ballast; general.**

Unless it is otherwise structurally supported, all track shall be supported by material which will-

(a) Transmit and distribute the load of the track and

railroad rolling equipment to the subgrade;

(b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails;

(c) Provide adequate drainage for the track; and

(d) Maintain proper track crosslevel, surface, and alinement.

49 C.F.R. § 213.103. In the case at bar, Plaintiff does not contend (and seems to concede) that the ballast he claims was improper or oversized was nevertheless in compliance with 49 C.F.R. § 213.103.[FN4]Defendant argues that the "regulations do not require any particular size of ballast or mandate how the areas between tracks are to be groomed. As a result, any claims in this regard are preempted or precluded."(Dft.'s Br. at 8.) In so arguing, Defendant relies on several cases.

> FN4. Plaintiff's expert, Raymond A. Duffany, opines that, *inter alia,*"Defendant[ ] knew or should have known that the ballast utilized in a majority of the walkway areas where Plaintiff performed his duties as car inspector over a significant period of his career was of improper size and gradation."(Pl.'s Expert Rep. at 22.) Nonetheless, Mr. Duffany states that "[t]he FRA does not regulate the size, type and gradation of ballast to be used. These items are left to the discretion of each railroad."(*Id.* at 10, 635 S.E.2d 179 .) Furthermore, Defendant proffers the affidavit of Rodney J. Lappin, "the Terminal Superintendent of Track for [Defendant]." (Dft.'s Mot. Ex. 7, Lappin Aff. ¶ 2.) Mr. Lappin states: "The ballast utilized by [Defendant] on the tracks, including areas between the tracks where employees are sometimes required to walk, complies with the requirements of 49 C.F.R. § 213.103...." (*Id.* ¶ 7, 635 S.E.2d 179.)

Defendant first relies on two separate Supreme Court cases interpreting the express preemption provision of the FRSA. In *CSX Transp., Inc. v. Easterwood,* the plaintiff brought a wrongful death suit under state law claiming that the railroad was negligent "for fail-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 3227584 (E.D.Mich.)
(Cite as: 2007 WL 3227584 (E.D.Mich.))

ing to maintain adequate warning devices at the crossing and for operating the train at an excessive speed." 507 U.S. 658, 661, 113 S.Ct. 1732, 1736, 123 L.Ed.2d 387 (1993). Before addressing whether the plaintiff's claim was preempted pursuant to what is now 49 U.S.C. § 20106(a)(2), the Supreme Court stated that there is a presumption against preemption when "a court [is] interpreting a federal statute pertaining to a subject traditionally governed by state law." Id. at 664, 113 S.Ct. at 1737.

> To prevail on the claim that the regulations have pre-emptive effect, [a party] must establish more than that they 'touch upon' or 'relate to' that subject matter, for 'covering' is a more restrictive term which indicates that pre-emption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law.

Id. at 664,113 S.Ct. 1738 (internal citations omitted). Against this backdrop, the Supreme Court held that the regulation issued pursuant to the FRSA that relates to the "maximum allowable operating speeds for all freight and passenger trains for each class of track on which they travel,"id. at 673, 113 S.Ct. at 1741,"cover[s] the subject matter of train speed," id. at 675, 113 S.Ct. at 1743, and thus, it preempted the plaintiff's "negligence action only insofar as it asserts that [the railroad's] train was traveling at an excessive speed." Id., 113 S.Ct. at 1743-44. Seven years later in Norfolk S. Ry. Co. v. Shanklin, the Supreme Court confronted a similar issue as that decided in Easterwood, and after employing the preemption analysis set forth in Easterwood, it concluded that a wrongful death action alleging that the railroad was negligent in failing to maintain adequate warning devices at a railroad crossing was preempted based on regulations issued pursuant to the FRSA. 529 U.S. 344, 358, 120 S.Ct. 1467, 1477, 146 L.Ed.2d 374 (2000).

*3 While Easterwood and Shanklin involved preemption of state law, the Seventh Circuit has extended the reasoning of these cases to an action brought pursuant to FELA. In Waymire v. Norfolk & W. Ry. Co., a panel of the Seventh Circuit addressed the following issue: "whether a railroad company can be held liable in a FELA negligence action claiming unsafe speed and inadequate warning devices when the complained of conduct complies with the conduct mandated by FRSA and its regulations." 218 F.3d 773, 775 (2000). The Seventh Circuit held that a railroad

company could not be liable under such circumstances and stated:

> To treat cases brought under federal law differently from cases brought under state law would defeat FRSA's goal of uniformity. It would deny recovery to the motorist struck by the train, but not to the engineer operating the train. We do not believe that is the result envisioned by the statute or by the Supreme Court's decisions. To the extent that FELA, then, is inconsistent with FRSA on the issues of train speed and warning devices at grade crossings, we hold that FRSA supersedes FELA.

Id. at 777.In Lane v. R.A. Sims, Jr., Inc., 241 F.3d 439 (5th Cir.2001), the Fifth Circuit took the Seventh Circuit's lead in holding that a railroad employee's FELA negligence action alleging a train was traveling at an excessive speed could not be maintained because "allowing juries in FELA cases to find negligence based on excessive speed, even though it did not exceed that set by the FRSA regulations, would further undermine uniformity, because it would result in the establishment, through such verdicts, of varying, uncertain speed limits at different crossings, as well as different speed limits at the same crossing, depending on the time of day, traffic conditions, and other variables." Id. at 443-44.

Two Judges in the Eastern District of Michigan have applied Waymire to railroad employees' FELA negligence claims alleging an occupational injury based on improper or oversized ballast. In Nickels v. Grand Trunk W. Railroad, Inc., 06-11846 (E.D.Mich. May 30, 2007), Judge Robert H. Cleland addressed whether the defendant's compliance with the FRA's ballast regulation, 49 C.F.R. § 213.103, precluded the plaintiff's FELA negligence claim. Id. at 2. Judge Cleland rejected the plaintiff's argument that the ballast regulations merely covered railroad safety, as opposed to railroad worker safety, because concluding otherwise would "undermine FRSA's express interest in national uniformity."Id. at 5. Moreover, the District Court in Nickels concluded that "[t]he ballast requirements substantially subsume the subject matter of Plaintiff's theory of recovery."Id. In an earlier case, Judge Marianne O. Battani granted summary judgment to the defendant railroad company holding that the FRSA ballast regulation precluded the plaintiff's FELA claim alleging that the defendant was negligent in its choice of ballast. Ferra

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 3227584 (E.D.Mich.)
**(Cite as: 2007 WL 3227584 (E.D.Mich.))**

*v. Canadian Nat'l/Illinois Central Railroad,* 05-72721 (E.D.Mich. May 4, 2007).

**\*4** Defendant also relies heavily on *Norris v. Cent. of Ga. R.R. Co. ., 280 Ga.App. 792, 635 S.E.2d 179 (Ga.Ct.App.2006).* Like the courts in *Ferra* and *Nickels,* the court in *Norris* was confronted with the question of whether the FRSA's ballast regulations precluded the plaintiff's FELA claim alleging that the defendant "was negligent for not using smaller ballast rock." *Id. at 181.*Concluding that the plaintiff's FELA claim was precluded, the *Norris* court reasoned that allowing the plaintiff's claim to proceed would undermine the FRSA's "goal of uniform, federal railroad regulation." *Id. at 183.*

In the case at bar, Plaintiff contends that Defendant was negligent for using improper or oversized ballast in Defendant's rail yards causing Plaintiff, after years of tranversing the oversized ballast in performing his duties as a railcar inspector, to suffer an injury to his left hip. For the same reasons the courts in *Nickels, Ferra,* and *Norris* rejected such claims, this Court rejects Plaintiff's claim here and concludes that Plaintiff's FELA negligence claim is precluded by the FRA's ballast regulation. As stated by the court in *Nickels:*

> The ballast requirements substantially subsume the subject matter of Plaintiff's theory of recovery. While the regulations offer no specific metric for the size, mixture or looseness of the ballast, they do ordain particular purposes that the ballast must serve. As a consequence, the regulations mandate a limited universe of material that is suitable for the listed purposes.

*Nickels,* at 5. Moreover, because the ballast requirements substantially subsume the subject matter of Plaintiff's theory of recovery, allowing Plaintiff to proceed with this FELA claim alleging that Defendant was negligent in its use of improper or oversized ballast would impose a duty greater than that of complying with the ballast regulation. Finally, the FRSA's goal of national uniformity could not be achieved "by a broad reading of FELA that would lead to different results depending on the vagaries of location and other variables posed by individual FELA claims."[FN5] *Id. at 6, 635 S.E.2d 179.* Therefore, the Court concludes that to the extent that Plaintiff's FELA claim rests upon Defendant's use of improper or oversized ballast, such a claim is precluded.

> [FN5.] For example, if this Court were to agree with Plaintiff that the ballast as used by the railroad in this case may create an unsafe working condition and therefore allow the jury to decide, as a matter of fact, whether or not Defendant created an unsafe working condition, then another jury in another case considering the same facts, i.e., the exact same ballast used in the exact same manner, could reach a conclusion exactly opposite that of the first jury. In other words, leaving it to each court and jury to determine whether the use of a particular ballast creates an unsafe working condition could very likely result in a lack of national uniformity.

In his response brief, Plaintiff asserts several reasons why he should be able to maintain his claim that Defendant was negligent under FELA for using improper or oversized ballast. All of Plaintiff's asserted reasons are unavailing. First, Plaintiff argues that the August 13, 2007 amendment of 49 U.S.C. § 20106 is plain and unambiguous evidence of Congress' "intent that no state cause of action involving federal regulations is preempted even if they 'cover the same subject matter,' so too, the same reasoning should apply to federal causes of action including the FELA case asserted by Plaintiff ...." (Pl.'s Resp. at 13.) On August 13, 2007, the FRSA was amended to add the following subsection:

**\*5** (b) Clarification regarding State law causes of action.

(1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging a party-

(A) has *failed to comply* with the Federal standard of care established by a regulation or order issued by the Secretary of Transporation ... covering the subject matter as provided in subsection (a) of this section;

(B) has *failed to comply* with its own plan, rule or standard that it created pursuant to a regulation or order issued by [the] Secretar[y]; or

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 3227584 (E.D.Mich.)
(Cite as: 2007 WL 3227584 (E.D.Mich.))

Page 5

(C) has *failed to comply* with a State law, regulation, or order that is not incompatible with subsection (a)(2).

(2) This subsection shall apply to all pending State law causes of action arising from events or activities on or after January 18, 2002.

49 U.S.C. § 20106(b) (emphasis added). As Defendant asserts, this subsection (b) was enacted to "rectify" the Federal court decisions in *Mehl v. Canadian Pac. Ry. Ltd.,* 417 F.Supp.2d 1104 (D.N.D.2006) and *Lundeen v. Canadian Pac. Ry. Co.,* 447 F.3d 606 (8th Cir.2006).*See*H.R. Conf. Rep. No. 110-259, Vol. 153, No. 120 Cong. Rec. H8589-H8590 (daily ed. July 25, 2007) (attached as Ex. 8 to Dft.'s Rep. Br.). In both *Mehl* and *Lundeen,* the courts held that the plaintiffs' state law negligence claims alleging that the defendant railroad failed to comply with federal regulations were preempted pursuant to the FRSA. *See Mehl,* 417 F.Supp.2d at 1112-21; *Lundeen,* 447 F.3d at 611. In the case at bar, Plaintiff is not alleging that Defendant *failed to comply* with a federal regulation. Consequently, this Court does not believe that 49 U.S.C. § 20106(b) applies to this case.

Second, Plaintiff contends that "[t]he *lack* of an 'express pre-emption clause' in § 20106 with respect to *federal* causes of action 'contains the best evidence' of Congress' *lack* of pre-emptive intent with respect to any federal causes of action brought pursuant to the FELA."(Pl.'s Resp. Br. at 14 (emphasis in original).) Whatever can be gleaned from Congress' silence on the preclusion of a federal cause of action, it is clear to this Court that in enacting the FRSA Congress expressly sought to create national uniformity in the regulation of railroads to promote safety. *See*49 U.S.C. § 20106(a)(1). As the Court concluded above, allowing Plaintiff to proceed with a FELA claim alleging that Defendant was negligent in its choice of ballast would undermine the FRSA's goal of national uniformity.

Third, Plaintiff argues that *Tyrell v. Norfolk S. Railway Co.,* 248 F.3d 517 (6th Cir.2001) should lead this Court to conclude that the ballast regulations do not substantially subsume Plaintiff's FELA cause of action. In *Tyrell,* the Sixth Circuit addressed the issue of whether Ohio's track center standards were preempted by the Interstate Commerce Commission

Termination Act (ICCTA) or the FRSA. *Id.* at 521.The Sixth Circuit concluded that Ohio's track safety standards addressed a safety issue; thus, preemption is governed by the FRSA not the ICCTA. *Id.* at 524.Ultimately, the court in *Tyrell* concluded that "no FRA regulation or action covers the subject matter of minimum track clearance ...."*Id.* at 525.Unlike the situation in *Tyrell* where the FRA did not issue any regulations pertaining to track clearances, *see id.,* in this case, the FRA has issued a regulation pertaining to ballast. Consequently, as Defendant contends, *Tyrell* is distinguishable from this case.

**\*6** Finally, Plaintiff cites cases from courts that have allowed FELA claims based on the defendant railroad employer's alleged negligent choice of ballast. *See, e.g., Grimes v. Norfolk S. Ry. Co.,* 116 F.Supp.2d 995, 998 (N.D.Ind.2000) (holding that the ballast "regulations are directed toward creating a safe roadbed for trains, not a safe walkway for railroad employees;" thus, a plaintiff's FELA claim for negligent choice of ballast was not precluded); *Elston v. Union Pac. R.R. Co.,* 74 P.3d 478 (Colo.Ct.App.2003) (same); *Miller v. CSX Transp., Inc.,* 159 Md.App. 123, 858 A.2d 1025 (Md.2004) (same). This Court, however, finds the reasoning of the courts in *Ferra, Nickels,* and *Norris* more persuasive.

### III. Remaining Claims

Although not mentioned in their response to Defendant's motion,[FN6] at the hearing, Plaintiff argued that even if his FELA claim alleging that Defendant was negligent in its use of improper or oversized ballast was precluded by the FRSA and the ballast regulation, viable FELA negligence claims would remain. More specifically, Plaintiff contended that the following allegations of negligence would remain:

> FN6. At the conclusion of its brief in support, Defendant requests "that plaintiff's claims against it be dismissed with prejudice."(Dft.'s Br. at 11.)

5. During the course of his employment with Defendants Plaintiff, Armid Crabbe, worked as a car inspector at Defendants' rail yards in Wayne County, Michigan, and during this time Plaintiff was required to continuously engage in job duties and walk on improperly sized ballast without being provided with adequate protection to the joints of

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 3227584 (E.D.Mich.)
**(Cite as: 2007 WL 3227584 (E.D.Mich.))**

his lower extremities. As a result of continually having to engage in these job duties and not being provided with proper and adequate and necessary protection, Plaintiff's physical condition deteriorated to a point to where he was forced to seek medical care and treatment to his left hip including a left hip replacement.

6. Defendants owed to Plaintiff, Armid Crabbe, under common law, applicable state standards and under the standards of applicable federal statutory law, including but not limited to 45 U.S.C. § 51 et seq., the following duties:

...

C. To provide adequate and safe methods of work as to each task assigned to Plaintiff;

D. To give notice to or warn Plaintiff of the dangerous conditions in which he was sent out to work, including improperly sized ballast;

...

F. To inspect and investigate the premises upon which Plaintiff was required to work for dangerous conditions, including improperly sized ballast in the areas where Plaintiff was required to work ....

7. Defendants breached the duties it owed to Plaintiff, Armid Crabbe, and were negligent in the premises in that they, among other things, failed to observe the standards of care with respect to the above-described duties as follows:

...

C. Failed to provide adequate and safe methods of work as to each task assigned to Plaintiff;

D. Failed to give notice to or warn Plaintiff of the dangerous conditions in which he was sent out to work, including improperly sized ballast;

...

**\*7** F. Failed to inspect and investigate the premises upon which Plaintiff was required to work for dan-

gerous conditions, including improperly sized ballast in the areas where Plaintiff was required to work ....
(Compl. ¶¶ 5; 6C.-D., F.; 7C.-D., F.) Moreover, the Court's review of Plaintiff's deposition testimony also reveals that Plaintiff is asserting that his left hip injury was caused by the squatting, crawling, and climbing he was required to do while performing his duties as a car inspector. (Dft.'s Mot. Ex. 2, Pl.'s Deposition at 32, 122-23.) Because Defendant's only move for summary judgment on the basis that Plaintiff's FELA claim alleging negligence based on improper or oversized ballast is precluded by the FRSA and the ballast regulation, the Court's grant of summary judgment in Defendant's favor as to Plaintiff's FELA claim alleging improper or oversized ballast does not result in a dismissal of Plaintiff's Complaint.

Accordingly,

**IT IS ORDERED** that Defendant Consolidated Rail Corporation's Motion for Summary Judgment is **GRANTED** as to Plaintiff's FELA claim alleging improper or oversized ballast.

E.D.Mich.,2007.
Crabbe v. Consolidated Rail Corp.
Not Reported in F.Supp.2d, 2007 WL 3227584 (E.D.Mich.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

1 of 1 DOCUMENT

**THOMAS J. FERRA, Plaintiff, v. CANADIAN NATIONAL/ILLINOIS CENTRAL RAILROAD (CN/IC) and GRAND TRUNK WESTERN, Defendants.**

**CIVIL CASE NO. 05-72721**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION**

*2007 U.S. Dist. LEXIS 88457*

**May 4, 2007, Decided
May 4, 2007, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff railroad employee sued defendant employer under the Federal Employer's Liability Act (FELA), *45 U.S.C.S. § 51 et seq.*, in which he sought damages for an injury he allegedly sustained to his right knee. The employer moved for summary judgment on the grounds that the employee's claims were precluded by the Federal Railroad Safety Act of 1970 (FRSA), *49 U.S.C.S. § 20101 et seq.*

**OVERVIEW:** The employee worked on and off for the employer from 1971 until 2003. In 2003, the employee worked for the employer in an office job. The employee claimed that it was not he began the office job that he realized that his knee was hurting. The employee claimed that the employer failed to provide him with a safe place to work because his employment required him to ambulate across ballast of an unsafe and irregular variety, which caused an injury to his right knee. The employer asserted the claims were precluded because the FRSA dictated the subject matter of ballast selection relative to track maintenance. The court found that there existed a danger that Congress's strived for uniformity would be undermined if courts allowed juries in FELA cases to find negligence based on a choice of ballast even though it complied with the requirements set for in the FRSA regulations. The regulation at issue "covered" or "substantially subsumed" the subject matter of a ballast selection relative to mainline track ballast. Because the employee did not dispute that the employer's choice of ballast did not comply with the regulations, his negligent choice of ballast claim was precluded.

**OUTCOME:** The employer's motion for summary judgment was granted.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN1] Under *Fed. R. Civ. P. 56(c)*, summary judgment may be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN2] The plain language of *Fed. R. Civ. P. 56(c)* mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants*
[HN3] With regard to a motion for summary judgment, the movant bears the burden of demonstrating the absence of all genuine issues of material fact. The burden on the moving party may be discharged by "showing" - that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case.



EXHIBIT

E

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants*
*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Nonmovants*
*Civil Procedure > Summary Judgment > Standards > Appropriateness*
[HN4] With regard to a motion for summary judgment, once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. *Fed. R. Civ. P. 56(e)*. The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict. The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the non-movant's favor.

*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
*Civil Procedure > Summary Judgment > Standards > Materiality*
[HN5] With regard to a motion for summary judgment, a fact is "material" and precludes grant of summary judgment if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties, and would necessarily affect the application of appropriate principles of law to the rights and obligations of the parties. To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the nonmovant's evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Scintilla Rule*
*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN6] With regard to a motion for summary judgment, no genuine issue of material fact exists when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. However, the mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant.

*Transportation Law > Rail Transportation > Maintenance & Safety*

*Transportation Law > Rail Transportation > Maintenance & Safety*
[HN7] The Federal Employer's Liability Act (FELA), *45 U.S.C.S. § 51 et seq.*, contemplates that the railroad furnish its employees with a reasonably safe place to work, but the rule does not contemplate absolute elimination of all dangers, but only the elimination of those dangers which could be removed by reasonable care on the part of the employer. Thus, negligence is the sole basis of liability under FELA. To prevail on a FELA claim, a plaintiff must prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation.

*Transportation Law > Rail Transportation > Maintenance & Safety*
[HN8] In 1970, Congress enacted the Federal Railroad Safety Act of 1970 (FRSA), *49 U.S.C.S. § 20101 et seq.*, to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents. *49 U.S.C.S. § 20101*. The FRSA grants the Secretary of Transportation the authority to prescribe regulations and issue orders for every area of railroad safety.

*Transportation Law > Interstate Commerce > Federal Preemption*
*Transportation Law > Rail Transportation > Maintenance & Safety*
[HN9] Pursuant to the Federal Railroad Safety Act of 1970 (FRSA), *49 U.S.C.S. § 20101 et seq.*, the Secretary of Transportation prescribes regulations and issues all orders concerning railroad safety in the United States. *49 U.S.C.S. §§ 20101, 20103(a)*. The Congressional intent to achieve national uniformity in railroad safety is clearly set forth in the FRSA. Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable. *49 U.S.C.S. § 20106. Section 20106* also includes a preemption clause, the primary goal of which is to ensure national uniformity in the laws, regulations and orders related to railroad safety in this country. The express preemption provision states that a state may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the state requirement. *49 U.S.C.S. § 20106*.

*Transportation Law > Interstate Commerce > Federal Preemption*
*Transportation Law > Rail Transportation > Maintenance & Safety*
[HN10] The language of the Federal Railroad Safety Act of 1970 (FRSA), *49 U.S.C.S. § 20101 et seq.*, pre-

emption provision dictates that, to pre-empt state law, the federal regulation must "cover" the same subject matter, and not merely "touch upon" or "relate to" that subject matter. *49 U.S.C.S. § 20106.* Thus, pre-emption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law.

*Transportation Law > Rail Transportation > Maintenance & Safety*
[HN11] The Secretary of Transportation has promulgated regulations pursuant to this authority, including establishing guidelines regarding mainline track ballast. *49 C.F.R. § 213.103.*

*Transportation Law > Rail Transportation > Maintenance & Safety*
[HN12] As a general negligence statute, the Federal Employer's Liability Act (FELA), *45 U.S.C.S. § 51 et seq.*, neither prohibits nor requires specific conduct by a railroad. By contrast, the Federal Railroad Safety Act of 1970 (FRSA), *49 U.S.C.S. § 20101 et seq.*, proscribes railroad conduct by empowering the Secretary of Transportation to implement comprehensive and detailed railroad safety regulations. *49 U.S.C.S. § 20103* states that the Secretary of Transportation, as necessary, shall prescribe regulations and issue orders for every area of railway safety.

*Transportation Law > Interstate Commerce > Federal Preemption*
*Transportation Law > Rail Transportation > Maintenance & Safety*
[HN13] In order to uphold the Federal Railroad Safety Act of 1970's (FRSA), *49 U.S.C.S. § 20101 et seq.*, goal of uniformity, a plaintiff's claims are precluded when the complained of conduct complies with the conduct mandated by FRSA and its regulations.

*Transportation Law > Interstate Commerce > Federal Preemption*
*Transportation Law > Rail Transportation > Maintenance & Safety*
[HN14] The Federal Railroad Safety Act of 1970 (FRSA), *49 U.S.C.S. § 20101 et seq.*, may preclude a Federal Employer's Liability Act (FELA), *45 U.S.C.S. § 51 et seq.*, claim under an analysis that FELA is a negligence-based statute, and like state common law negligence claims, FELA negligence claims may not be used to impose duties beyond those imposed by Congress or the FRSA.

*Torts > Procedure > Preemption > Express Preemption*
*Transportation Law > Interstate Commerce > Federal Preemption*
*Transportation Law > Rail Transportation > Maintenance & Safety*
[HN15] Congress's intent that railroad safety regulations be nationally uniform mandates a finding that negligence claims based on stricter levels of compliance are precluded if the railroad complied with the federal regulations.

*Transportation Law > Rail Transportation > Maintenance & Safety*
[HN16] With regard to railroad safety, unless it is otherwise structurally supported, all track shall be supported by material which will -- (a) transmit and distribute the load of the track and railroad rolling equipment to the subgrade; (b) restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails; (c) provide adequate drainage for the track; and (d) maintain proper track crosslevel, surface, and alinement. *49 C.F.R. § 213.103.*

*Civil Procedure > Federal & State Interrelationships > Federal Common Law > Preemption*
[HN17] In order for a regulation to have a preemptive effect, it must "cover" the same subject matter, and not merely "touch upon" or "relate to" that subject matter. Thus, pre-emption will lie only if the federal regulations substantially subsume the subject matter.

**COUNSEL:**  [*1] For Thomas J. Ferra, Plaintiff: Howard M. Cohen, LEAD ATTORNEY, O'Bryan, Baun, Birmingham, MI.

For Canadian National/Illinois Central Railroad, (CN/IC), Grand Trunk Western Railroad, Incorporated, Defendants: Richard A. Dietz, LEAD ATTORNEY, Mary J. Tatham - INACTIVE, Michael J. Liddane, Foster, Meadows, Detroit, MI.

For Thomas J. Joyce, III, Plaintiff's former attorney, Respondent: Thomas J. Joyce, III, LEAD ATTORNEY, Hannon & Joyce, Philadelphia, PA.

**JUDGES:** Marianne O. Battani, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Marianne O. Battani

**OPINION**

*OPINION AND ORDER GRANTING DEFEN-
DANTS' MOTION FOR SUMMARY JUDGMENT*

## I. INTRODUCTION

Before the Court is Defendants' Motion for Summary Judgment (Doc. # 30). Plaintiff sued Defendants under the Federal Employer's Liability Act ("FELA"), *45 U.S.C. §§51-60*, seeking damages for an injury he allegedly sustained to his right knee. Plaintiff claims that Defendants failed to provide him with a safe place to work because his employment required him to ambulate across ballast of an unsafe and irregular variety, causing an injury to his right knee. Defendants seek summary judgment, contending that Plaintiff's claims are precluded by the Federal Railroad Safety Act ("FRSA") because that [*2] act dictates the subject matter of ballast selection relative to track maintenance.

## II. STATEMENT OF FACTS

Thomas J. Ferra began working for Grand Trunk as a trackman in 1971. He quit and returned to Grand Trunk as a trackman in 1973, working out of Pontiac. He was a trackman from 1973 until April of 1975 when he became an assistant foreman, and ultimately a foreman in May of 1976.

In 1985, Plaintiff was terminated for disciplinary reasons but was reinstated in 1988 as a trackman. From 1988 until January of 2003, Plaintiff worked various track department jobs out of Grand Trunk's Pontiac, Michigan yard, including foreman on an undercutting gang, rail and tie gangs, section gangs, and patrol foreman. As of January 2003, Plaintiff began working for Defendants in an office job in charge of getting material out to production gangs and ordering safety supplies.

Plaintiff testified that it wasn't until he began working in his office job as a material foreman that he "realized that my knee was . . . hurting." Dep. of Plaintiff, 42-43. Plaintiff testified that there was no specific injury incident, and that he never filed a personal injury report because there wasn't any day that he could say [*3] that he had an injury. He admits that in all of his years of walking on ballast he never injured his knee. *Id.,* at 44, 77-78, 92-93, 103. He testified that he became aware of his right knee pain sometime around August or September of 2002. When asked during deposition to explain the basis for the allegations made in his complaint, he pointed primarily to his work on main line rail and tie gangs, called "production jobs," during the summer months from 1993 until December of 2002, as causing the right knee pain/injury.

The production jobs required Plaintiff to work on those portions of track designated as main line track. He testified that the rail gang consisted of himself and a crane operator. His crew's job was to pick up the rail to be replaced with a crane and place it in a gondola car, which is coupled to the crane locomotive. In doing so, Plaintiff claims that he would have to step down from gondola cars, on his right foot, to the ground and walk along the mainline on mainline ballast. [1] He believed that his right knee pain was due to the fact that he had to get on and off gondolas 50-60 times per day which had a two foot drop and that he always came down on his right foot on the [*4] ballast, which he described as too large and too loose and was hard to kneel and walk on. He testified that the mainline ballast was a different type then what they had been using prior to 1993. Before 1993, Defendants used quarry rock which was rounded and interlocked with itself. He stated that after 1993, the pieces were two to three times the size of the mainline ballast that had been used previously. Ferra testified that the new ballast did not interlock, and thus, was always loose. He believes that it was unsafe to walk on it. He also testified that in the last four years, the railroad has gone back to using smaller stone on the mainline track. Ferra saw Dr. David Wind in May 2003, and Dr. Wind eventually told him that he believed the knee injury was caused by walking on ballast, as this caused his foot to twist back and forth.

1   Railroad ballast is the stone seen between and around the railroad tracks. It is an essential component of the track structure. Ballast provides support, drainage, and erosion protection for the track bed. Ballast is mandated and regulated pursuant to the U.S. Department of Transportation and the Federal Railroad Administration track standards. Def.'s [*5] Ex. C, American Railway Engineering and Maintenance of Way Association ("AREMA") Manual for Railway Engineering.

## III. STANDARD OF REVIEW

[HN1] Under *Rule 56(c) of the Federal Rules of Civil Procedure*, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

As the United States Supreme Court has ruled:

In our view, [HN2] the plain language of *Rule 56(c)* mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing suffi-

cient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).*

[HN3] The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002).* "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court -- that there is an absence [*6] of evidence to support the nonmoving party's case." *Celotex, 477 U.S. at 325.*

[HN4] Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. *FED. R. CIV. P. 56(e)*; *Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002).* "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).* The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See Hunt v. Cromartie, 526 U.S. 541, 549, 119 S. Ct. 1545, 143 L. Ed. 2d 731 (1999)*; *Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).*

[HN5] "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)*(citation [*7] omitted) *(quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)).* To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

[HN6] *Anderson, 477 U.S. at 249-50.* "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.'" *Mich. Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).* However, the mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant. *Anderson, 477 U.S. at 252.*

## IV. ANALYSIS

Plaintiff's negligence claim is brought under Federal Employer's Liability Act ("FELA"), *45 U.S.C. §§ 51-60.* [HN7] FELA "contemplates that the railroad furnish its employees with a reasonably [*8] safe place to work, but the rule does not contemplate absolute elimination of all dangers, but only the elimination of those dangers which could be removed by reasonable care on the part of the employer." *Bridger v. Union Ry. Co., 355 F.2d 382, 386 (6th Cir. 1966).* Thus, negligence is the sole basis of liability under FELA. *Perkoski v. New York, C. & St. L. R. Co., 217 F.2d 642, 642 (6th Cir. 1954).* "To prevail on a FELA claim, a plaintiff must 'prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation.'" *Adams v. CSX Transp., Inc., 899 F.2d 536, 539 (6th Cir. 1990) (quoting Robert v. Consol. Rail Corp., 832 F.2d 3, 6 (1st Cir.1987)).* Ferra seeks damages for an injury he allegedly sustained to his right knee as a result of Defendant's negligent choice of mainline track ballast.

Defendant argues that the track sections at issue in this case were clearly designated as mainline track, thus requiring mainline ballast for proper support and drainage. It contends that Plaintiff's negligence claim is precluded because it rests upon different ways by which it might have supported the mainline track to comply with the Federal Railroad Safety Act ("FRSA"). [*9] In essence, Defendant argues that compliance with the FRSA precludes Plaintiff from suing under FELA.

[HN8] In 1970, Congress enacted the Federal Railroad Safety Act (FRSA) "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." *49 U.S.C. § 20101.* The FRSA grants the Secretary of Transportation the authority to "prescribe regulations and issue orders for every area of railroad safety," . . . .

*Norfolk Southern Ry. Co. v. Shanklin, 529 U.S. 344, 347-348, 120 S. Ct. 1467, 146 L. Ed. 2d 374 (2000)*. Pursuant [HN9] to the FRSA, the Secretary of Transportation prescribes regulations and issues all orders concerning railroad safety in the United States. *49 U.S.C. § 20101, 49 U.S.C. § 20103(a)*. The Congressional intent to achieve national uniformity in railroad safety is clearly set forth in the FRSA. "Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable." *49 U.S.C. § 20106. Section 20106* also includes a preemption clause, the primary goal of which is to ensure national uniformity in the laws, regulations and orders related to railroad safety in this country. The express [*10] preemption provision states: "A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement." *49 U.S.C. § 20106*.

The Supreme Court has held that,

> [T]he [HN10] language of the FRSA's pre-emption provision dictates that, to pre-empt state law, the federal regulation must "cover" the same subject matter, and not merely' 'touch upon' or 'relate to' that subject matter." *Id., at 664, 113 S.Ct. 1732*; see also *49 U.S.C. § 20106*. Thus, "pre-emption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law."

*Norfolk Southern Ry. Co. v. Shanklin, 529 U.S. 344, 352, 120 S. Ct. 1467, 146 L. Ed. 2d 374 (2000)* (citations omitted). See also *CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664, 113 S. Ct. 1732, 123 L. Ed. 2d 387 (1993)*. The [HN11] Secretary of Transportation has promulgated regulations pursuant to this authority, including establishing guidelines regarding mainline track ballast. *49 C.F.R. § 213.103*.

However, because this case involves a negligence allegation brought by an employee under the FELA, rather than allegations brought by a private citizen under state [*11] common law tort remedies, the Court is not presented with a typical preemption analysis. Rather, the court is presented with the interaction of two federal statutes.

> [HN12] As a general negligence statute, FELA neither prohibits nor requires specific conduct by a railroad. By contrast, the Federal Railroad Safety Act of 1970,

*49 U.S.C. § 20101 et seq.*, proscribes railroad conduct by empowering the Secretary of Transportation to implement comprehensive and detailed railroad safety regulations. *49 U.S.C. § 20103* ("The Secretary of Transportation, as necessary, shall prescribe regulations and issue orders for every area of railway safety.").

*Waymire v. Norfolk and Western Ry. Co., 218 F.3d 773, 775 (7th Cir. 2000)*.

In *Waymire*, the Seventh Circuit held that a railroad company cannot be liable in a FELA negligence action in which the plaintiff asserted the railroad allowed a train to travel at an unsafe speed and did not erect adequate warning devices at rail crossing. The court reasoned that[HN13] in order to uphold FRSA's goal of uniformity, the plaintiff's claims are precluded "when the complained of conduct complies with the conduct mandated by FRSA and its regulations." *Waymire, 218 F.3d at 776*. It [*12] went on to state, "[g]iven that the federal agency empowered by Congress to establish uniform, comprehensive federal safety standards . . . has promulgated such regulations, federal common law and statutes on these issues are necessarily displaced." *Id., at 777*. As a result, the court also found that the plaintiff's FELA inadequate warning device claim was superseded by the FRSA and its regulations because the defendant's actions complied with federal regulations. In other words, [HN14] "the FRSA may preclude a FELA claim under an analysis that FELA is a negligence-based statute, and like state common law negligence claims, FELA negligence claims may not be used to impose duties beyond those imposed by Congress or the FRA." *Norris v. Cent. of Ga. R.R. Co., 280 Ga. App. 792, 635 S.E.2d 179, 182-83 (Ga. Ct. App. 2006)*.

The Fifth Circuit also reached the conclusion that a plaintiff's FELA negligence action was precluded in light of Congress's intent that railroad safety regulations be nationally uniform. *Lane v. R.A. Sims, Jr., Inc., 241 F.3d 439, 443 (5th Cir. 2001)*. The Fifth Circuit held that uniformity would be undermined if a FELA plaintiff were allowed to file a negligence claim, but a non-railroad-employee [*13] plaintiff's state law negligence claim would be preempted by the FRSA. "Dissimilar treatment of the claims would have the untenable result of making the railroad safety regulations established under the FRSA virtually meaningless . . . ." *Id*. It also found that uniformity would be undermined by "allowing juries in FELA cases to find negligence based on excessive speed, even though it did not exceed that set by the FRSA regulations . . . ." *Id., at 443-44*.

Both *Waymire* and *Lane* involved negligence suits, in which the plaintiff claimed that the FRSA regulations merely created a minimal level of compliance, but that certain conditions or circumstances required the railways to exceed the standards set forth in the regulations. The appellate courts, relying on both *Shanklin* and *Easterwood*, held that[HN15] Congress's intent that railroad safety regulations be nationally uniform mandated finding that negligence claims based on stricter levels of compliance were precluded if the railroad complied with the federal regulations. The courts reasoned that uniformity would be undermined if the negligence suits were allowed to proceed for two reasons. First, the fact that a non-employee's state law claim [*14] would be preempted by FRSA's regulations, and thus, allowing an employee to sue where a non-employee would be precluded from doing so, even though the complained-of conduct was identical, would undermine national uniformity. Second, uniformity would be undermined if FELA negligence suits were allowed to proceed even if the complained-of conduct complied with federal regulations because it would "allow various state juries to second-guess the actions of an interstate railroad which has complied with federally-mandated design standards . . . ." *Key v. Norfolk S. Ry. Co., 228 Ga. App. 305, 491 S.E.2d 511, 513-14 (Ga. Ct. App. 1997).*

This case presents a similar issue to both *Waymire* and *Lane,* in that Ferra alleges that Defendants were negligent in their choice of ballast, even though that choice complied with the FRSA regulations. [2] However, in this case there is almost no danger that juries will reach different results in employee and non-employee negligence claims because Ferra's alleged injury resulted from years of repeatedly stepping off railroad cars and kneeling on the mainline track ballast. Non-railroad employees would have no reason, and even less opportunity, to undertake such actions.

> 2 [HN16] "Unless [*15] it is otherwise structurally supported, all track shall be supported by material which will -- (a) Transmit and distribute the load of the track and railroad rolling equipment to the subgrade; (b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails; (c) Provide adequate drainage for the track; and (d) Maintain proper track crosslevel, surface, and alinement." *49 C.F.R. § 213.103.* It is undisputed that the ballast in question met the regulations for the type of ballast in question.

Notwithstanding the improbability of a non-employee suit arising from this set of circumstances, there still exists the danger that Congress's strived-for

uniformity would be undermined by "allowing juries in FELA cases to find negligence based on" choice of ballast even though it complied with the requirements set forth in the FRSA regulations. *Lane, 241 F.3d at 444.* This danger exists because juries could reach different verdicts in similar employee negligence cases. In other words, even though the railroad's choice of mainline ballast complies with the regulations, in some cases a jury may find the [*16] railroad negligent for choosing compliant ballast, and in some cases find the railroad non-negligent for its choice of identical ballast.

Next, the preemptive effect of the FRSA regulations also favors a finding that Plaintiff's negligence claim is precluded. [HN17] In order for a regulation to have a preemptive effect, it "must 'cover' the same subject matter, and not merely '"touch upon"' or '"relate to"' that subject matter." *Shanklin, 529 U.S. at 352.* Thus, "preemption will lie only if the federal regulations substantially subsume the subject matter . . . ." *Id.*

Although Ferra has cited case law that has found that an employee's negligence claim is not precluded by the FRSA if there is a question of whether a railroad would be required to adopt stricter regulations regarding walkway ballast requirements, the position taken by the Fifth and Seventh Circuits is the sounder view. *See Hendrix v. Port Terminal R.R. Ass'n, 196 S.W.3d 188 (Tex. Ct. App. 2006)* (holding summary judgment was inappropriate where the record was devoid of testimony from railroad engineers and safety inspectors whether the railroad would be required to strengthen or enlarge the roadbed beyond federal requirements or [*17] in contravention of federal law in order to address or remedy the complaints related to the ballast in the rail yard walkway and the general rail yard conditions.). Here, Plaintiff's claim, as stated in his deposition, does not involve walkway and rail yard conditions. Moreover, the Supreme Court rejected the notion that the federal regulations merely created a minimal level of compliance to which stricter measures could be imposed by FELA complainants. "Whether the State should have originally installed different or additional devices, or whether conditions at the crossing have since changed such that [different measures] would be appropriate, is immaterial to the preemption question." *Shanklin, 529 U.S. at 358.* In other words, the strived-for uniformity would be undermined if the federal regulations merely created a minimal level of compliance regarding mainline track ballast. What is determinative is whether the regulations at issue cover or substantially subsume the subject matter.

> To the extent that [Ferra's] FELA claim rests upon different ways by which [Defendant] might have supported the mainline track to comply with *49 C.F.R. §*

*213.103*, the negligence claim is precluded. The [*18] fact that the regulation does not specify any size for the various purposes of the ballast does not alter the fact that the regulation nonetheless "covers" or "substantially subsumes" the subject matter of a ballast selection relative to track maintenance.

*Norris, 635 S.E.2d at 183*. The Court agrees with the reasoning in *Norris*. Even though the regulations at issue do not dictate the size of the ballast, it does dictate that the ballast chosen for mainline track transmit and distribute the load of the track and railroad rolling equipment to the subgrade, restrain the track laterally, longitudinally, and vertically under dynamic loads, provide adequate drainage, and maintain proper track crosslevel, surface, and alinement. *49 C.F.R. § 213.103*. Therefore, the regulation at issue "covers" or "substantially subsumes" the subject matter of a ballast selection relative to mainline track ballast. Because Plaintiff does not dispute that Defendants' choice of ballast did not comply with the regulations, his negligent choice of ballast claim is precluded.

## V. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED.**

**IT IS SO ORDERED.**

s/ Marianne O. Battani

MARIANNE [*19] O. BATTANI

UNITED STATES DISTRICT JUDGE

DATED: *May 4, 2007*

### *FINAL JUDGMENT*

PURSUANT to an Opinion and Order of the Court Granting Defendant's Motion for Summary Judgment entered on this date,

**IT IS ORDERED AND ADJUDGED** that judgment is hereby entered for Defendant in the above action.

Entered this 4TH day of May, 2007, in Detroit, Michigan.

**IT IS SO ORDERED.**

s/ Marianne O. Battani

MARIANNE O. BATTANI

UNITED STATES DISTRICT JUDGE

DATED: *May 4, 2007*

LEXSEE

**STANLEY R. NICKELS, Plaintiff, v. GRAND TRUNK WESTERN RAILROAD, INC. and CANADIAN NATIONAL/ILLINOIS CENTRAL, Defendants.**

**Case No. 06-CV-11846-DT**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION**

*2007 U.S. Dist. LEXIS 88481*

**May 30, 2007, Decided**
**May 30, 2007, Filed**

**COUNSEL:** [*1] For Stanley R. Nickels, Plaintiff: Laurence C. Acker, Robert B. Thompson, LEAD ATTORNEYS, Harrington, Thompson, Chicago, IL.

For Grand Trunk Western Railroad, Incorporated, A Delaware corporation and a subsidiary of Grand Trunk Corporation and Canadian National/Illinois Central; successor to Grand Trunk Western Railroad Company, a corporation, Defendant: Richard A. Dietz, LEAD ATTORNEY, Mary J. Tatham - INACTIVE, Michael J. Liddane, Foster, Meadows, Detroit, MI.

**JUDGES:** Robert H. Cleland, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Robert H. Cleland

**OPINION**

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pending before the court is a motion for summary judgment, filed by Defendants Grand Trunk Western Railroad, Inc. and Canadian National/Illinois Central on March 30, 2007. The matter has been fully briefed and the court concludes a hearing on the motion is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant the motion.

**I. BACKGROUND**

Plaintiff Stanley R. Nickels worked for Defendants from 1976 to 2004 as a switchman or conductor. (Pl.'s Dep. at 46-48, 61-62, Defs.' Ex. B.) He worked in Flint, Pontiac and Lansing, Michigan at various times, with his time in Lansing [*2] from 2002 to 2004 as the most relevant period for purposes of this case. (*Id.*) His job duties required him to walk along tracks and, specifically, upon ballast, which is loose stone along a track that serves mainly structural purposes for the track. (*Id.* at 97-98.) Plaintiff's arthritic toe condition required surgery in 2004, which caused him to leave work on medical disability. (*Id.* at 48.) Plaintiff identified several areas in Lansing where the "bad ballast" was located, which included mainline railroad track. (*Id.* at 98-101, 108-09.) Plaintiff alleges that the ballast where he worked in Lansing was too large -- up to two inches in size -- and not level. (*Id.* at 119-122.) Plaintiff's complaint advances the theory that Defendants were negligent for providing an unsafe work environment to him, because the size and instability of the ballast created a foreseeable risk of injury to Plaintiff. (Compl. at PP 12-24.) Plaintiff advances his cause of action under the Federal Employers' Liability Act ("FELA"), *45 U.S.C. § 51, et seq.* (*Id.* at PP 19-20, 23-24.)

Defendants' motion for summary judgment argues that the composition of its ballast was regulated by the requirements of the Federal Railroad [*3] Safety Act ("FRSA"), *49 U.S.C. § 20101*, plus the regulations of the Federal Railroad Administration ("FRA") and Department of Transportation ("DOT"), compliance with which precludes Plaintiff's FELA claim. (Defs.' Br. at 14-21.) Plaintiff responds that his FELA claim is not precluded and that there is at least a material question of fact concerning whether Defendants were negligent for failing to provide him with a safe work environment. (Pl.'s Br. at 19-30.)

**II. STANDARD**

Under *Federal Rule of Civil Procedure 56*, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c).*



EXHIBIT

F

"Where the moving party has carried its burden of show-ing that the pleadings, depositions, answers to interroga-tories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genu-ine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir. 1987)* (citing *Celotex Corp. v. Ca-trett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986))*.

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require [*4] submission to a jury." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. The existence of some factual dispute, how-ever, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id. at 252* ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'").

## III. DISCUSSION

To prevail on his FELA claim, Plaintiff must "prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation." *Adams v. CSX Transp., Inc., 899 F.2d 536, 539 (6th Cir. 1990)* (quotation omitted). Defendants essentially argue that they owed Plaintiff no duty beyond complying with the FRSA, because the national interest in railroad safety standards should not give way to varying determinations, generally by juries, about the condition of railroad ballast in specific cases. The FRSA explicitly states the uni-formity interest. "Laws, regulations, and orders related [*5] to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable." *49 U.S.C. § 20106*. The statute authorizes the Secretary of Transportation to prescribe such regulations and orders. *49 U.S.C. §§ 20101, 20103(a)*.

FRSA also preempts state law, *49 U.S.C. § 20106*, and the United States Supreme Court has interpreted the preemption provision to mean that "the federal regulation must cover the same subject matter and not merely touch upon or relate to that subject matter . . . pre-emption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law." *Norfolk Southern Ry. Co. v. Shanklin, 529 U.S. 344, 352, 120 S. Ct. 1467, 146 L. Ed. 2d 374 (2000)* (quotations omitted); *see also CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664, 113 S. Ct. 1732, 123 L. Ed. 2d 387 (1993)*. Simi-larly, the FRSA has preclusive effect vis-a-vis other fed-

eral statutes. *See e.g., Waymire v. Norfolk and Western Ry. Co., 218 F.3d 773, 775 (7th Cir. 2000)* (holding that FRSA precludes a FELA claim alleging excessive train speed and inadequate warning devices); *Lane v. R.A. Sims, Jr., Inc., 241 F.3d 439 (5th Cir. 2001)* (excessive speed).

The Secretary of Transportation has [*6] promul-gated rules regarding track ballast, *49 C.F.R. § 213.103*, and the question before this court is whether those regu-lations preclude Plaintiff's FELA claim. The federal regulations state that:

> [u]nless it is otherwise structurally sup-ported, all track shall be supported by ma-terial which will -
>
> (a) Transmit and distribute the load of the track and railroad rolling equipment to the subgrade;
>
> (b) Restrain the track laterally, longi-tudinally, and vertically under dynamic loads imposed by railroad rolling equip-ment and thermal stress exerted by the rails;
>
> (c) Provide adequate drainage for the track; and
>
> (d) Maintain proper track crosslevel, surface

*49 C.F.R. § 213.103*. Plaintiff's complaint and his deposi-tion testimony, fairly understood, do not allege that De-fendants failed to comply with the above regulations. There is no allegation that the ballast upon which he worked failed to, for instance, adequately support the railroad rolling equipment, provide adequate drainage, etc. Rather, Plaintiff appears to argue that the above regulations address railroad safety but not railroad worker safety. Implicitly, Plaintiff asserts that FELA imposes an additional duty on Defendants beyond meet-ing [*7] the ballast requirements promulgated pursuant to FRSA. Because accepting this view of FELA will un-dermine FRSA's express interest in national uniformity, the court concludes that Defendants owed Plaintiff no duty separate from complying with the federal ballast requirements.

The ballast requirements substantially subsume the subject matter of Plaintiff's theory of recovery. While the regulations offer no specific metric for the size, mixture or looseness of the ballast, they do ordain particular pur-poses that the ballast must serve. As a consequence, the regulations mandate a limited universe of material that is suitable for the listed purposes. In the same way that

federal speed regulations set uniform national ceilings that a FELA claim of negligence cannot alter, *see Waymire, 218 F.3d 773*; *Lane, 241 F.3d 439*, the ballast regulations set a base level that a FELA claim may not augment. *See also Norfolk & Western Ry. Co. v. Public Utilities Com'n of Ohio, 926 F.2d 567, 571-72 (6th Cir. 1991)* (holding that the FRSA's explicit refusal to adopt a regulation requiring bridge walkways amounted to a negative preemption of Ohio regulation concerning walkways on railway bridges and trestles). [*8] The purpose of a uniform national standard would be disregarded and its practical effect lost if individual FELA claims could create a hodgepodge of differing standards in disparate locales, each such "standard" being attuned by the verdict of a separate jury to the peculiar circumstances of one railroad worker's physical characteristics and his reaction to the otherwise-compliant ballast found at that locale.

The potential for eradicating national uniformity through patchwork litigation is manifest in this district court's docket. Another plaintiff recently filed a claim against the same Defendants, alleging that his degenerative knee condition was the effect of years of work he did in Pontiac on "ballast, which he described as too large and too loose and was hard to kneel and walk on." *Ferra v. Canadian Nat'l/Illinois Central Railroad and Grand Trunk Western, No. 05-72721, 2007 U.S. Dist. LEXIS 88457, *4 (E.D. Mich., May 4, 2007)* (Battani, J.). The court granted summary judgment to Defendants according to the same law of preclusion. *2007 U.S. Dist. LEXIS 88457 at *6-13.* An identical outcome is appropriate in this case. Plaintiff's attempt in his sur-reply brief to distinguish *Ferra* as only involving mainline track is unavailing. The [*9] federal regulation that occupies the field refers to "all track" without distinguishing between mainline and non-mainline track. *49 C.F.R. § 213.103.* Moreover, the ballast requirements appear in a set of regulations that "prescribes initial minimum safety requirements *for railroad track that is part of the general railroad system of transportation.*" *49 C.F.R. § 213.1* (emphasis added). Whether mainline track or not, there is no question of material fact concerning whether Plaintiff

worked and walked along track that is part of the general railroad system of transportation. He did. The analysis of *Ferra*, therefore, is equally applicable to Plaintiff's case. [1]

> 1   To the extent that Plaintiff also brings a claim under Michigan law, federal law, pursuant to the above analysis, preempts any state law claims.

In sum, the purposes of FRSA are not served by a broad reading of FELA that would lead to different results depending upon the vagaries of location and other variables posed by individual FELA claims. To the extent that Plaintiff relies upon persuasive authority from other jurisdictions that have concluded otherwise, this court is not persuaded. [2]

> 2   The court need not reach Defendants' alternative [*10] argument that Plaintiff failed to establish that Defendants had actual or constructive knowledge of the defect that caused his injury.

## IV. CONCLUSION

IT IS ORDERED that Defendant's "Motion for Summary Judgment" [Dkt. # 16] is GRANTED. A separate judgment will issue.

S/ Robert H. Cleland

ROBERT H. CLELAND

UNITED STATES DISTRICT JUDGE

Dated: May 30, 2007

## JUDGMENT

In accordance with the May 30, 2007 "Opinion and Order Granting Defendants' Motion for Summary Judgment,"

IT IS ORDERED AND ADJUDGED that judgment is entered in favor of Defendants Grand Trunk Western Railroad, Inc. and Canadian National/Illinois Central and against Plaintiff Stanley R. Nickels. Dated at Detroit, Michigan, this 30th day of May, 2007.

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JAMES COOPER,

       Plaintiff,

CASE NO. 05-CV-73392

-vs-

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

CSX TRANSPORTATION, INC.,

       Defendant.

_____/

### OPINION AND ORDER GRANTING
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Now before the Court is Defendant CSX Transportation, Inc.'s ("Defendant") April 16, 2007

Motion for Summary Judgment.  (Doc. No. 25).  On May 16, 2007, Plaintiff Donald C. Cooper

("Plaintiff") filed his Response.  The Court held a motion hearing on October 18, 2007.  For the

following reasons, the Court GRANTS the Motion.

I.     **BACKGROUND**

This case arises out of Plaintiff's claim Defendant failed to provide a safe work-place and

adequate warnings pursuant to the Federal Employee Liability Act ("FELA").  Plaintiff Donald

Cooper ("Plaintiff") began working for Defendant in 1967 when he graduated from high school.

(Plf's Br. Ex. A, Cooper Dep. 6).  Plaintiff then spent two years in the Navy but returned to work

for Defendant in 1970.  (*Id.* at 7).  Plaintiff continued to work for Defendant as a clerk or operator

until February 3, 2003.  (*Id.* at 8-16, 19-22, 25).  During Plaintiff's long career as a railway worker,

Plaintiff held a variety of jobs, which included walking over ballast though the railyards.  (*Id.*)

Ballast, which consists of crushed rock and other materials, is used to support the track



EXHIBIT

6

structure and allow drainage. Mainline ballast is composed of larger materials, generally 3/4 of an inch to 2 inches in diameter. (Plf's Br. Ex. J, Dunn Dep. at 33-34). Yard ballast is smaller than mainline ballast and is 3/8 of an inch to 1 inch in diameter. (*Id.* at 33). The American Railway Engineering and Maintenance of Way Association recommended practices, and Defendant's own maintenance of way instructions, call for the use of yard ballast in areas of frequent foot traffic. (*Id.* at 25, 31-34). Plaintiff and two of his co-workers agree that walking on mainline ballast is strenuous and provides uneven footing. (Cooper Dep. at 32; Plf's Br. Ex. E, Wellhausen Dep. at 17; Plf's Br. Ex. F. Ringler Dep. at 17-19).

In 2000, Plaintiff started to experience pain in his right leg. (*Id.* at 27). Plaintiff went to his family physician, Dr. David Rosenberg, to receive treatment. (*Id.*). Dr. Rosenberg did not diagnose Plaintiff but referred him to other specialists between 2000 and 2002. (*Id.* at 30). In September 2002, Plaintiff was referred to a specialist named Dr. Peter Bono, who performed an x-ray on Plaintiff's pelvis on October 15, 2002. This x-ray revealed that Plaintiff was likely suffering from avascular necrosis in the right hip. (Plf's Br. Ex. C, X-ray Report).

On April 10, 2003, Plaintiff's orthopaedic surgeon suggested that Plaintiff's condition was related to his repeated exposure to walking on ballast over his career. (Cooper Dep. at 32; Plf's Br. Ex. D, Habusta Dep. at 18). Avascular necrosis of the hip is a condition in which "the hip actually will lose its blood supply, and the bone in the hip will die and become deformed and collapsed and painful." (Habusta Dep. at 11:25-12:2). Avasular necrosis is often related to alcohol use, steroid use, diabetes or trauma of the hip. (*Id.* at 41-45; Def's Br. Ex. B Nieman Aff. ¶ 6). This condition can also present as "idiopathic," or having no known cause. (Nieman Aff. ¶ 10).

Plaintiff filed the instant suit on September 1, 2005, alleging Defendant was negligent in

maintaining a safe work environment. Plaintiff contends his condition is at least partially attributed to Defendant's decision to use mainline ballast in areas of the railway yard which had frequent foot traffic.

Defendant filed a Motion for Summary Judgment alleging that Plaintiff's claim is (1) barred by the statute of limitations; (2) fails to set forth any evidence that Defendant was negligent or caused Plaintiff's injury; and (3) Plaintiff's claim is precluded by the Federal Railroad Administration's ("FRA") Track Safety Standards as set forth in 49 C.F.R. § 213.103.

## II.   ANALYSIS

### A.   Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action

or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

### B.   Preclusion under Federal Railway Safety Act

Defendant argues that Plaintiff's claims under FELA is precluded by federal law which covers the subject matter of Plaintiff's claim. Specifically, Defendant contends the Federal Railway Safety Act ("FRSA"), 49 U.S.C. § 20101 *et seq.*, implemented in 49 C.F.R. § 213.103, and enforced through the FRA, precludes Plaintiff's claim.

4

The Supreme Court has held that the FRSA preempts state court claim in two situations. In *CSX Transp. Inc. v. Easterwood,* 507 U.S. 658 (1993), the Court found the FRSA preempted a state law claim where the plaintiff alleged the train was traveling at an excessive rate of speed. *Id.* at 664. In *Norfolk Southern Ry. Co. v. Shanklin,* 529 U.S. 334 (2000), the Court held that the FRSA preempted a state law claim based on the allegation that the railroad did not maintain adequate warning devices. 529 U.S. at 358-59. In both of these cases, the Court relied upon the FRSA's preemption provision which states that to preempt a state law claim the "federal regulation must cover the same subject matter, and not merely relate to that subject matter." *Id.* at 352 (internal citation omitted). The Court reasoned that regulations adopted by the FRA pursuant to FRSA preempted state law claims where the promulgated federal regulations "not only establish[] a ceiling, but also preclud[e] additional state regulations of the sort that [plaintiff] seeks to impose on [defendant]." *Easterwood,* 501 U.S. at 674.

Defendant argues that just as the Supreme Court has found that state law claims are preempted where a federal regulation "covers" the same subject matter, here the FRSA's regulation regarding ballast precludes Plaintiff's FELA claim.[1] Defendant contends that allowing Plaintiff's

---

[1]Section 213.103, "Ballast; general" states:

Unless it is otherwise structurally supported, all track shall be supported by material which will–

    (a)    Transmit and distribute the load of the track and railroad rolling equipment to the subgrade;

    (b)    Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails;

    (c)    Provide adequate drainage for the track; and

claim to go forward would undermine the FRA's goal of national uniformity and also impose greater requirements on railroads than those set by the FRA.

Defendant relies on three pertinent cases for its argument. In *Waymire v. Norfolk & Western Ry. Co.*, 218 F.3d 773 (7th Cir. 2000), the Seventh Circuit Court of Appeals relied upon the Supreme Court's holding in *Easterwood* in a factually similar action which involved an employee's claim pursuant to FELA. In *Waymire*, the court held,

> [t]o treat cases brought under federal law differently from cases brought under state law would defeat FRSA's goal of uniformity. It would deny recovery to the motorist struck by the train, but not to the engineer operating the train. We do not believe this is the result envisioned by the statute or by the Supreme Court decisions. To the extent that FELA, then, is inconsistent with FRSA on the issues of train speed and warning devices at grade crossings, we hold that FRSA supersedes FELA.

218 F.3d at 777. In *Lane v. R.A. Simms, Jr. Inc.*, 241 F.3d 439 (5th Cir. 2001), the Fifth Circuit Court of Appeals similarly relied upon *Easterwood*, and held that an employee's claim under FELA was precluded by the FRA safety regulations regarding train speed regulations. *Id.* at 443-44. In *Norris v. Central of Georgia R.R. Co.*, 635 S.E.2d 179 (Ga. Ct. App. 2006), the court held that where an employee had claimed a railroad was negligent for using mainline ballast instead of yard ballast pursuant to FELA, his claim was precluded by the Track Safety Standards regarding ballast as set forth in § 213.103.

The Court recognizes that Eastern District of Michigan Judges Marianne Battani and Robert Cleland have recently issued opinions on this exact issue, holding that a plaintiff's FELA claim was precluded under the FRSA. *See Ferra v. Canadian Nat'l/Illinois Central R.R.*, No. 40 (E.D. Mich., May 4, 2007); *Nickels v. Grand Trunk Western R.R.*, No.34 (E.D. Mich., May 30, 2007). These

---

(d)    Maintain proper track crosslevel, surface, and alignment.

49 C.F.R. § 213.103.

decisions rely upon *Waymire, Lane, and Norris. Ferra*, No. 40, slip op. at 10; *Nickels*, No. 34 at 6 (relying upon the analysis in *Ferra*).

In *Ferra*, the court noted that there was no risk that juries would reach different results in employee and non-employee cases because the injury involved a cumulative injury. *Ferra*, No. 40, slip op. at 9. However, the court found that there was the goal of uniformity would be undermined if juries reached different results in similar employee cases. *Id.* at 10. The court further held the § 213.103 "covered" the same subject matter and therefore preclusion was appropriate. *Id.*

This Court agrees with the analysis set forth *Ferra* and applied in *Nickels*. Allowing Plaintiff's claim to proceed would undermine the goal of national uniformity by resulting in piecemeal litigation across the nation. Further, "[i]n the same way that federal speed regulations set uniform national ceilings that a FELA claim of negligence cannot alter, the ballast regulations set a base level that a FELA claim may not augment." *Nickels*, No. 34, slip op. at 5 (internal and external citations omitted). Therefore, the Court holds summary judgment is appropriate.

### C.    Statute of Limitations

Assuming *arguendo*, Plaintiff's claim was not precluded under FRSA, Plaintiff's claim is still barred by the statute of limitations. "To prevail on a FELA claim, a plaintiff must prove the traditional common law elements of negligence: duty, foreseeablility, and causation." *Adams v. CSX Transp., Inc.*, 899 F.2d 536, 539 (6th Cir. 1990) (internal citation omitted). Further, an employee must file his claim within "three years from the day the cause of action accrued." 45 U.S.C. § 56.

The Supreme Court has recognized that "when the specific date of *injury* cannot be determined because an injury results from continual exposure to a harmful condition over a period of time a plaintiff's cause of action accrues when the injury manifests itself." *Urie v. Thompson*, 337 U.S. 163, 170 (1949). Subsequently, the Supreme Court further refined this rule, holding that

7

an action accrues once a plaintiff is "in possession of the critical facts that he has been hurt and who

has inflicted the injury." *United States v. Kubrick*, 444 U.S. 111, 122-23 (1979). In adopting this

"discovery rule" approach, the Sixth Circuit has held that a "cause of action accrues for Federal

Employers' Liability Act statute of limitations purposes when a reasonable person knows or in the

exercise of reasonable diligence should have known both the injury and its governing cause."

*Campbell v. Grand Truck R.R. Co.*, 238 F.3d 772, 777 (6th Cir. 2001) (quoting *Fries v. Chicago &*

*Northwestern Transp. Co.*, 909 F.2d 1092, 1095-96 (7th Cir. 1990)).

    The discovery rule requires an objective inquiry into when Plaintiff knew, or in the exercise

of reasonable diligence should have known, the essential facts of his condition and the potential

cause of the injury. A date certain as to the injury is not required, Plaintiff need only need know or

have reason to know the likely cause of the injury. *Fries*, 909 F.2d at 1095. The due diligence

requirement means that a plaintiff who has reason to suspect his condition or injury is work-related

must take affirmative steps to determine the cause of the injury. *Id*.

    Plaintiff filed this action on September 1, 2005. Therefore, if Plaintiff was aware of

sufficient facts which put him on notice that he had an injury and that he should have investigated

its cause or origin prior to September 1, 2002, his claim would be barred under the statute of

limitations. Plaintiff testified that he began seeking medical advice for his leg pain in 2000.

Plaintiff further testified that he was aware that the only activity which bothered his leg or gave him

more pain was "walking on ballast." (Cooper Dep. at 27, 31-32). Plaintiff also testified that he was

officially diagnosed with avascular necrosis of the hip when he received an x-ray on October 15,

2002. (*Id*. at 52; Plf's Br. Ex. C).

    Defendant argues that because he began seeking treatment in 2000 and knew that walking

on ballast caused him to have pain in his leg whereas no other activities had this effect, his action accrued before September 1, 2002. Taking the record in a light most favorable to Plaintiff, there appears to be no genuine issue of material fact as to when a reasonable person should have known of the condition and its cause. Plaintiff was aware of his leg pain as early as 2000, and he was also aware that walking on ballast caused him leg pain. This Court finds it unpersuasive that Plaintiff was unaware of the exact medical diagnosis of his condition until October 15, 2002. *See Matson v. Burlington N. Santa Fe*, 240 F.3d 1233, 1236 (10th Cir. 2001) (holding "knowledge of the specific cause of a work-related injury is not required to trigger the statute of limitations in a FELA action."); *Fries*, 909 F.2d at 1095 ("the injured plaintiff need not be certain of the cause . . . ."). Plaintiff was aware prior to September 1, 2002, that he had persistent leg pain which was aggravated and instigated by walking on ballast, but no other surface or other activities. (Cooper Dep. at 31-32).

In *Campbell*, the Sixth Circuit affirmed a district court decision which held a plaintiff had failed to file his claim within the statutory period where the plaintiff testified he had experienced tingling and pain on a frequent basis and always experienced the tingling while working with power tools at his job. *Campbell*, 238 F.3d at 775. The district court deduced from this testimony that the plaintiff knew "(1) he was experiencing tingling and numbness on a daily basis, and (2) the tingling pain was caused by his working with power tools. [The court further concluded] that possessing these facts, reasonable diligence on plaintiff's part would have led plaintiff to conclude that he had been injured as a result of using Grand Trunk's power tools." *Id.* (internal quotations omitted). The Sixth Circuit affirmed this decision stating "[a]ccording to his own admissions, the plaintiff experienced the symptoms of his disorder on a daily basis for several years and reasonably must have recognized the connection with his operation of power tools and equipment furnished and used

9

on his job with Grand Trunk." *Id.* at 776.

The Court finds the present case similar to *Campbell*. Plaintiff has admitted that he suffered from pain as early as 2000. He further testified that the only activity which caused the pain and aggravated it was walking on ballast. Therefore, as in *Campbell*, Plaintiff was in possession of the facts which should have given him reason to know of the existence of an injury and its connection to his walking on ballast prior to September 1, 2002.

Therefore, the Court holds alternatively that Plaintiff's claim is barred by the statute of limitations.[2]

## IV.    CONCLUSION

For the reasons stated, the Court **GRANTS** Defendant's Motion for Summary Judgment.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  October 23, 2007

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on October 23, 2007.

---

[2] The Court declines to address Defendant's argument in regards to negligence and causation.

10

s/Denise Goodine
Case Manager



EXHIBIT

*H*

PENGAD 800-531-6989









