IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

| | |
|---|---|
| ROBERT DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Cause No.4-07-CV-00521-WRW |
| vs. ) | |
| ) | |
| UNION PACIFIC RAILROAD COMPANY, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY DISPOSITION**

COMES NOW Plaintiff Robert Davis, by and through counsel, and for his Response in Opposition to Defendant Union Pacific's Motion for Summary Judgment and states as follows:

**I.   CASE BACKGROUND**

Plaintiff, Robert Davis, was an employee of defendant on February 13, 2007. He was employed as an Outside Locomotive Mover. As the title indicates, he moved locomotives around defendant's North Little Rock service track. On this day, while walking within defendant's North Little Rock yard between the lead track and the number three pit, **Exhibit 1** he stepped on a large rock. His ankle and knee twisted. As a result he suffered an injury to his lower extremity.

The walkway in this area is comprised of mostly small rocks but scattered throughout the area are larger rocks that pose tripping hazards. The area in which he was walking does not support any track or track bed. Some of defendant's employees who are required to walk in this area had complained about the presence of and danger of the larger rocks in this area before plaintiff was injured. Plaintiff's claims are analogous to a premises liability claim, i.e. defendant let exist a known tripping hazard on its property when it had a duty to provide a safe walking area.

In this instance, the walkway just so happened to be comprised of ballast rock. The subject of railroad ballast is complex. The American Railroad Engineers and Maintenance-of-Way Association, known as AREMA, the preeminent railroad engineering trade group, has studied this subject and has put out numerous recommendations regarding ballast. **Exhibit 2-1, 2-2** An entire section in its *Manual for Railway Engineering*, Chapter 1 Roadway and Ballast: Ballast, is devoted to some of the technical standards applicable to railroad ballast. **Exhibit 2-3**. Defendant has adopted a set of ballast standards that echo the recommendations of AREMA. **Exhbit 2-4** Every branch of the military, all defense agencies and all Department of Defense field activities have also adopted the AREMA ballast recommendations. **Exhibit 2-5** A category of ballast, sometimes identified as Class 2 or Size 5, refers to smaller type of ballast, measuring from 1" to 3/8". Each one of the previously identified entities, defendant included, have agreed that this smaller size of ballast is appropriate for ballast in secondary main, branch and yard tracks to "facilitate easier walking along the cars during loading and unloading operations" Id. At 6-28

## II.  LEGAL ANALYSIS

### A.  Standard of Review - Summary Judgment

Summary judgment may be granted only if the moving party demonstrates (1) that there is no genuine issue as to any material fact, and (2) that the moving party is entitled to judgment as a matter of law. Rule 56 (c) of the Federal Rules of Civil Procedure. The burden of demonstrating the propriety of a summary judgment rests on the moving party. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). A jury trial is favored in FELA cases and is considered to be part of a railroad employee's substantive remedy. <u>Bailey v. Central Vermont Ry., Inc.</u>, 319 U.S. 350, 354 (1943). The policy of providing an expansive remedy mandates that even marginal claims should go to the jury. To deprive railroad workers of the benefit of a jury trial in close or

doubtful cases is to take away a goodly portion of the relief to which they are entitled. <u>Blair v. Baltimore and Ohio Railroad Company</u>, 323 U.S. 600, 602 (1945). The 7th Circuit noted, "The lenient standard for avoiding summary judgment under the FELA merely mirrors the pro-plaintiff slant of the substantive law." <u>Harbin v. Burlington Northern R.R. Co.</u>, 921 F.2d 129, 131 (7th Cir. 1990). A plaintiff's burden of proof in a FELA action is *"significantly lighter"* than in an ordinary negligence case. <u>Id.</u> at 132 (emphasis added). Evidence scarcely more substantial than pigeon bone broth is enough to place an FELA action before a jury. <u>Id.</u>

The FELA is a broad remedial statute which must be liberally construed to further its humanitarian goal of holding railroads responsible for the physical dangers to which their employees are exposed. <u>Fonseca v. Consolidated Rail Corp.</u>, 246 F.3d 585 (6th Cir. 2001) (citing <u>Consolidated Rail Corp. v. Gottshall</u>, 512 U.S. 532, 543 (1994)); <u>Urie v. Thompson</u>, 337 U.S. 163, 180 (1949). Summary judgment is strongly disfavored in FELA cases and close cases should be allowed to proceed to trial. <u>Bailey</u> 319 U.S. at 354. The standard applied by federal courts in determining whether the evidence is sufficient to send a case to the jury under the FELA, is "significantly broader than the standard applied in common law negligence actions." <u>Metcalfe v. Atchison, Topeka, and Santa Fe Railway Company</u>, 491 F.2d 892 (10th Cir.1973). Citing <u>Lavender v. Kurn</u>, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946), the <u>Metcalfe</u> court held that "[o]nly when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear." <u>Metcalfe</u> at 895.

**B.     Standard of Review – Statutory Construction**

"Courts must presume the legislature says in a statute what it means and means in a statute what it says there." See <u>Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy</u>, 126 S.Ct. 2455, 2459, 165 L.Ed.2d 526(2006) (quoting <u>Conn. National Bank v. Germain,</u> 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391(1992)). "In statutory construction cases, 'the first step

3

is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular distribute in the case.'" *See* Fullenkamp v. Veneman, 383 F.3d 478, 481 (6th Cir. 2004)(citation omitted). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *See* Robinson v. Shell Oil Co., 519 U.S.337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808(1997)(citation omitted); and McCarthy v. Bronson, 500 U.S. 136, 139, 111 S.Ct. 1737, 114 L.Ed.2d 194(1991)).

    **C.**    **Applicable Federal Statutes and Regulations: FELA v. FRSA preclusion**

        *1.*    *The FELA was Enacted Prior to the FRSA and is Intended to be the Exclusive Legislation Controlling Injured Railroad Employee's Rights and Remedies .*

Congress enacted the FELA in 1908 with the purpose of providing railroad workers with a remedy for personal injury suffered as a result of the negligence of employer railroads or fellow workers. The statute states in pertinent part:

> "Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier…for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . ."

*See* 45 U.S.C. §51.

When Congress enacted the FELA in 1908, its clear and unambiguous focus was on reducing railroad worker injuries and deaths resulting from accidents on interstate railroads. *See* Urie v. Thompson, 337 U.S. 163, 181, 93 L.Ed. 1282, 69 S.Ct. 1018(1949). *See also* Wilkerson v. McCarthy, 336 U.S. 53, 68, 93 L.Ed. 497, 69 S.Ct. 413(1949) (holding that the FELA "was designed to put on the railroad industry some of the cost for the legs, eyes, arms, and lives which it consumed in its operations."). Under the FELA, a railroad is required to provide its employees with a reasonably safe place to work. *See* Gadsden v. Port Auth. Trans-Hudson Corp., 140 F.3d

4

207 (2nd Cir. 1998) and Sinclair v. Long Island R.R., 985 F.2d 74 (2nd Cir. 1993).  The FELA is the exclusive remedy for railroad employees to recover damages for injuries resulting from the negligence of his or her railroad employer. Lane v. R.A. Sims, Jr., Inc., 241 F.3d 439 (5th Cir. 2001)

### 2. The FRSA was Enacted after the FELA and Does not Preclude FELA Causes of Action.

Approximately 62 years after Congress enacted the FELA, Congress enacted the Federal Rail Safety Act (hereafter "FRSA") "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents."  40 U.S.C. §20101.  The stated purpose of the FRSA is therefore completely compatible with the purpose of the FELA, to promote safety and hold railroads responsible for their negligence.  Congress also gave the Secretary of Transportation the authority to prescribe regulations and issue orders related to railroad safety "*supplementing* laws and regulations in effect on October 16, 1970."  49 U.S.C. §20103(a) (emphasis added).  Thus by its plain and unambiguous language, through its enactment of the FRSA, Congress intended to *supplement* existing laws governing railroad safety like the FELA, not  supersede, invalidate, vitiate, preempt or preclude them.

To facilitate national uniformity of the laws that governed railroads, Congress also enacted a preemption clause as part of the FRSA, 49 U.S.C. §20106.  The confusion over the meaning of §20106 prompted congress to amend it on August 3, 2007.  "The amendment 'reflected Congress's disagreement with the manner in which the courts, including our own in *Lundeen I,* had interpreted §20106 to preempt state law causes of action whenever a federal regulation covered the same subject matter as the allegations of negligence of a state court lawsuit.' " Bates v. Missouri & Northern Arksansas Railroad Company, Inc., 548 F.3d 634, 637 (8th Cir. 2008) citing Lundeen v. Canadian Pacific Railway Co., 532 F.3d 682, 688 (8th Cir. 2008).

Any case decided before August 3, 2007 where a court found that a claim was preempted or precluded based on a court's interpretation of §20106 is suspect.   Congress amended §20106 in August of 2007 to read in pertinent part:

> **"(b) Clarification regarding State law causes of action.—**
> **(1)** Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party--
> > **(A)** has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;
> > **(B)** has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or
> > **(C)** has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2)."

This is clear indication that Congress did not intend for the FRSA to preempt state legislation or causes of action. Furthermore, there is noting in §20106 that indicating that the FRSA precludes legislation or causes of actions based upon **federal** law. If Congress had intended any form of preclusion, it could have included such language in the August 3, 2007 amendment.

FRSA §20106(b)(1)(B) allows a state cause of action based upon a railroad's failure to adhere to its own standards enacted "pursuant to a regulation or order issued by either of the Secretaries." Defendant has enacted its own ballast standard as noted above. As noted below, "ballast" is, in part, regulated by the FRSA. Defendant, therefore, has a standard pursuant to a regulation of the Secretary of Transportation. As a result, by the plain language of §20106, plaintiff is not preempted or precluded from pursuing a claim that defendant did not adhere to its own ballast standards.

6

Plaintiff is alleging that defendant allowed a tripping hazard to exist in its walkways and it therefore did not provide a safe work environment. A different way of stating that same idea would be to say defendant placed or allowed Grade 1 ballast in an area where Grade 2 ballast is mandated by and in violation of Union Pacific's ballast gradation standards, and it therefore did not provide a safe work environment. The fist way of stating the allegation is a simple claim of negligence that does not touch or concern any federal regulation. The second way of stating the allegation frames the same issue by recognizing that defendant violated its own ballast standards. Neither of these two ways of stating the same claim are preempted or precluded by §20106.

### 3. 49 C.F.R §213.103 Does not Subsume Regulation of Ballast in Walkways or Other Locations

The Secretary of Transportation delegated its authority to prescribe regulations and issue orders related to railroad safety which *supplement existing laws* to the Federal Railroad Administration ("FRA"). *See* 49 C.F.R. §1.49(c). Pursuant to this delegated authority, the FRA has issued the following regulation regarding ballast contained in Part 213, Subpart D, titled Track Structure:

> §213.103    Ballast; general
>
> *Unless it is otherwise <u>structurally supported</u>, all <u>track shall be supported</u> by materials which will* –
> (a)    Transmit and distribute the load of the track and railroad rolling equipment to the subgrade;
> (b)    Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails;
> (c)    Provide adequate drainage for the track; and
> (d)    Maintain proper track crosslevel, surface, and alinement.

49 C.F.R. §213.103.

49 C.F.R. §213.103 has its own preemption clause, which also unambiguously states that only "State laws, regulations, or orders" are preempted by the regulations contained in Part 213 of 49 C.F.R.  49 C.F.R. §213.2 titled, Preemptive Effect, states as follows:

> Under 49 U.S.C. 20106, issuance of these regulations preempts any *State* law, regulation, or order covering the same subject matter, except an additional or stringent law, regulation, or order that is necessary to eliminate or reduce an essentially local safety hazard; is not incompatible with a law, regulation, or order of the United States Government; and that does not impose an unreasonable burden on interstate commerce.

By its own plain and unambiguous language, the FRA never intended to issue a regulation that covered every possible area of railroad safety.  The FRA makes it clear that the regulations contained in 49 C.F.R. §213, particularly Subpart D concerning Track Structure, including 49 C.F.R. §213.103, prescribe only the ***"minimum"*** requirements for, among other things, ballast.  *See* 49 C.F.R. §213.101(emphasis added)

A simple reading of 49 C.F.R. §213.103 evidences that the regulation does not address, cover or substantially subsume the issue of ballast material that may be used to comprise employee walkways in train yards.  By its plain and unambiguous language, 49 C.F.R. §213.103 covers and relates to nothing more than ballast used to *support* railroad track.  It is a regulation that is designed solely to ensure the integrity and alignment of railroad track, and not to protect or prevent railroad workers from being injured on walkways contained in the train yard.  To hold otherwise, would be to ignore the plain language of the regulation itself, and indeed the entire plain and unambiguous language of the provisions of Chapter 213 in total.  Chapter 213 covers track safety, and track safety alone – not employee walkways or walkway conditions.  In this case, Plaintiff Robert Davis does not claim that he was injured while walking on ballast that was supporting track, or that he was injured as a result of inadequately supported track.  As such §213.103 is inapplicable to this case.

If the employee walkway at issue were made out of asphalt or concrete as is often the case at service tracks and other locations, there wouldn't be a single word of §213.103 that would be relevant to the present discussion. Defendant attempts to argue that one word that is the title to §213.103 indicates that section subsumes all use of ballast anywhere and for any reason whatsoever. That argument is not only counter to all logic and reason, it is counter to defendant's own standards.

### *4.     Plaintiff's Claim is not Based Solely Upon Defendant's Failure to Use Appropriately Sized Ballast.*

Plaintiff's allegations of negligence against Defendant are found in ¶7 of his Complaint. Plaintiff has specifically alleged, among other things, that defendant was negligent for failing to provide a safe place to work, for failing to provide reasonably safe conditions for work, failing to provide reasonably safe walking areas and failing to inspect and maintain its ballast. As noted previously, plaintiff's main contention is that defendant allowed a tripping hazard to exist in its walkways. The fact that these large rocks existed, had been complained about in the past, and yet were not removed, is indicative that defendant did not properly maintain or inspect its walkways. There is nothing about those allegations that have to do with the size of ballast defendant chose to place in that area. Those allegations state that defendant chose the composition of its walkways, then negligently allowed unsafe conditions to exist in those walkways.

If the offending tripping hazard had been a brake shoe, the end of a railroad tie, a piece of scrap metal or any other item, there would be no discussion regarding preclusion. As it stands the hazard was a piece of rock that was larger than and inconsistent with the surrounding smaller sized rock. The issue isn't about the size of the ballast defendant used in the area as much as it is that defendant allowed larger rocks in that area inconsistent with the sized ballast **defendant** chose to place in its walkways.

**D.     Defendant Has Failed to Prove That Plaintiff's FELA Claims
are Precluded by 49 C.F.R. §213.103**

*1.     Defendant Bears the Burden of Proving That Plaintiff's FELA Claims are
Precluded by The FRSA and Specifically 49 C.F.R. §213.103*

Because preclusion, a doctrine analogous to federal preemption, is an affirmative defense,[1] defendant bears the burden of proving that plaintiff 's FELA claims are precluded by the FRSA and specifically the provisions of 49 C.F.R. §213.103.  *See* Fifth Third Bank v. CSX Corp., 415 F.3d 741, 745 (7th Cir. 2005); Emerson v. Kansas City So. Ry. Co., 503 F.3d 1126 (10th Cir. 2007); Norfolk So. Ry. Co. v. Box, 2007 WL 4442292 (N.D. Ill., Dec. 17, 2007); and Village of Depue, Illinois v. Exxon Mobil Corp., 2008 WL 3271917 (7th Cir., Aug. 11, 2008).

*2.     Defendant Has Failed to Prove That The FRSA and Specifically 49 C.F.R.
§213.103 Substantially Subsumes Plaintiff's FELA Claims*

In order to prove that plaintiff's FELA claims are precluded by the FRSA, specifically 49 C.F.R. §213.103, as defendant contends, defendant must prove that the substance of 49 C.F.R. §213.103 "substantially subsumes" plaintiff's FELA claims.  *See* Elston v. Union Pac. RR Co., 74 P.3d 478, 485-89 (Col.App. 2003)(citing CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664, 113 S.Ct. 1732, 1738, 123 L.Ed.2d 387 (1993)). A copy of Elston is attached as **Exhibit 3**, and is hereby incorporated by reference as if fully set forth herein

Although the motion at hand does not involve preemption of a state law claim, the same analysis holds true:

> Thus, the first issue is whether the FRSA covers the subject matter of railroad walkways.  ***To prevail on a claim that the FRSA has preemptive effect, the FRSA regulations must not merely touch upon or relate to the subject matter, but must substantially subsume it.***

*Id*. (emphasis added).

---

[1] Defendant CSX has specifically pled federal preemption as an affirmative defense in this case.  *See* Defendant's Answer and Affirmative Defenses, p. 2, ¶8.

Defendant's argument is based almost completely on cases citing preemption of state law claims based upon §20106 or extrapolations of that theory to preclude federal claims, i.e. Dickerson v. Union Pacific, 428 F.Supp.2d 909 (E.D. Ark. 2006). Clearly this body of case law is no longer determinative in light of the amendment of §20106. Furthermore, the majority of those cases deal with speed limits or other areas of regulation, not the regulation of ballast.

Defendant relies almost exclusively on cases from the Eastern District of Michigan to support its contention that ballast regulation is subsumed by the FRSA. Defendant failed to advise this Court that of the reported cases that have decided whether the FRSA (and in some cases 49 C.F.R. §213.103) precludes a railroad worker's FELA claims, the majority of those Courts have ruled that the railroad worker's claims are not precluded by the FRSA. *See, e.g.,* Elston v. Union Pac. RR Co., 74 P.3d 478, 485-89 (Co.App. 2003)(reversing trial court's grant of summary judgment holding that the FRSA and 49 C.F.R. 213.103 precluded plaintiff's FELA ballast claims); CSX Transp., Inc. v. Miller, 858 A.2d 1025, 1047-1055 (Md.App. 2004)(affirming trial court's denial of summary judgment for defendant CSX holding that the FRSA and 49 C.F.R. 213.103 did not preclude plaintiff's FELA ballast claims). A copy of Miller is attached as **Exhibit 4**, and is hereby incorporated by reference as if fully set forth herein; Hendrix v. Port Terminal RR Assoc., 196 S.W.3d 188, 193-201 (Tex.App. 2006)(reversing trial court's grant of summary judgment holding that the FRSA and 49 C.F.R. 213.103 precluded plaintiff's FELA ballast claims). A copy of Hendrix is attached as **Exhibit 5**, and is hereby incorporated by reference as if fully set forth herein; Grimes v. Norfolk So. Ry. Co., 116 F.Supp.2d 995, 999-1005 (N.D. Ind., Sept. 18, 2000)(holding FELA claims were not preempted by FRSA). A copy of Grimes is attached as **Exhibit 6**, and is hereby incorporated by reference as if fully set forth herein; Norfolk So. Ry. Co. v.

Box, 2007 WL 4442292, **7-10 (N.D. Ill, December 17, 2007)(holding that FRSA did not preempt Illinois state law). A copy of Box is attached as **Exhibit 7**, and is hereby incorporated by reference as if fully set forth herein; Southern Pac. Transp. Co. v. Public Utilities Comm., 647 F.Supp. 1220, 1224-27 (N.D.Cal. 1986), *affirmed at* 820 F.2d 1111 (9th Cir. 1987)(holding that FRSA does not preclude FELA ballast claims). A copy of the Southern Pacific Transportation cases are attached collectively as **Exhibit 8**, and are hereby incorporated by reference as if fully set forth herein; and Illinois Cent. Gulf v. Tennessee Public Serv. Comm., 736 S.W.2d 112 (Tenn.App. 1987)(holding that FRSA does not preclude FELA ballast claims). A copy of Illinois Central Gulf is attached as **Exhibit 9**, and is hereby incorporated by reference as if fully set forth herein.

The fact is that of the 5 appellate courts that have weighed in on this issue, 4 of the 5 courts have ruled against the defendant railroads, holding that the FRSA, and specifically 49 C.F.R. §213.103, does not preclude railroad worker FELA ballast claims.[2] The reasons why the overwhelming majority of appellate courts have rejected what defendant is now trying to sell to this Court are as plain and unambiguous as the language of 49 C.F.R. §213.103 itself.

The plain language of the regulation evidences that it does not "substantially subsume" plaintiff's FELA claims. Plaintiff's FELA claims concern and arise from defendant's failure to provide a reasonably safe workplace by failing to provide safe walkways on which to perform his work duties. Plaintiff's allegations are concerned with walkways and have nothing whatsoever to do with tracks or the provisions of §213.03. Other than the fact that ballast rock is used, in this instance, for both support of the track and for walkways, his claims have nothing in common with any language in §213.03. If the walkways had been paved as opposed to made of ballast not a single word in §213.03 would be applicable to plaintiff's claims and defendant would have nothing

---

[2] *See* Elston at Exhibit 7; Miller at Exhibit 8; Hendrix at Exhibit 9; Southern Pacific Transportation at Exhibit 12, and Illinois Central Gulf at Exhibit 13.

to argue regarding preclusion. Instead, merely because of the composition of the walkways in defendant's yards are similar to its track bed, defendant is claiming plaintiff's claims are precluded. This is arguing form over substance.

Nowhere in §213.103, in all of Part 213 of Chapter 49, or in the FRSA regulations as a whole is there mention of employee walkways or yard walkway conditions. The above regulation does not touch, cover or substantially subsume the issue or subject matter of employee walkways or yard walkway conditions.

> Evan a surface glance at the FRSA regulation relied on by CSX persuades us that it does not touch, let alone pervasively cover, the railroad yard conditions that allegedly fell short of the safe and healthy workplace environment that CSX was obligated to provide for its employees. The regulation is concerned with the track and its immediately adjoining area and not with railroad yards. The obvious concern, moreover, is with the safety of the train, the prevention of derailments, and not the quality of the work place provided for employees.

Hendrix, 196 S.W.3d at 196-97 (quoting CSX Transp., Inc. v. Miller, 858 A.2d 1025, 1050 (Md.App. 2004)) at Exhibit 4.

As the Colorado Court of Appeals noted in Elston when discussing 49 C.F.R. 213.103:

> These standards are directed at promoting a safe roadbed for trains, but offer no indication whether a railroad has a duty to provide safe walkways for employees alongside its tracks.
>
> * * *
>
> Because walkways are not covered by the FRSA, whether defendant complied with these regulations is immaterial in determining whether a reasonable person in defendant's situation would have provided walkways alongside its tracks.

Elston, 74 P.3d at 488 (citations omitted) at Exhibit 3.

In Miller v. CSX Transp., Inc., the Maryland Court of Appeals found:

> The federal District Court pointed out, as we have ourselves observed, that the FRSA regulations were concerned with a "safe roadbed for trains and not a safe walkway for railroad employees." The Court flatly rejected the preclusion argument.
>
> ***Every circuit that has considered the issue of walkways has concluded that the FRSA is silent on the question of walkways. These regulations are directed toward creating a safe***

13

> *roadbed for trains, not a safe walkway for railroad employees who must inspect the trains. In view of the fact that this railroad requires its employees to perform numerous track-side inspections of its trains for various reasons, this Court declines to find anything in the regulations cited by the Defendant that precludes this Plaintiff from asserting that the railroad was negligent for failing to provide a safe place to walk.*

Miller, 858 A.2d at 1051 (referring to and citing Grimes v. Norfolk So. Ry. Co., 116 F.Supp.2d 995, 1002-03 (N.D. Ind., Sept. 18, 2000)) at Exhibit 4.

Neither 49 C.F.R. §213.103 nor any other FRSA regulation touches, covers or substantially subsumes the issue of what constitutes proper ballast materials, proper ballast size, proper grading, proper incline(s), or proper maintenance/inspection for employee walkways. From a pure statutory construction standpoint, 49 C.F.R. §213.103 does not cover or substantially subsume plaintiff's FELA claims. In order to grant the drastic relief that defendant is asking for, this Court would be required to read into 49 C.F.R. §213.103 and the FRSA regulations that which simply is not there.

If §213.103 substantially subsumed regulation and standards for railroad ballast why would AREMA, defendant and the government itself feel the need to enact additional standards for railway ballast? Why would defendant acknowledge in its Ballast Gradiation Table that there are "Industry Standards" for ballast size? See Exhibit 2- 4  Defendant itself acknowledges that the railroad industry as a whole saw the need for further clarification of what type of ballast should be used for what type of trackage. Every entity involved in railroad construction, maintenance, or operation has adopted additional ballast standards. Despite the fact that defendant knew of that fact, it did not feel the need to inform this Court of that fact.

       3.     *The Cases Relied Upon by Defendant are Distinguishable or Were Founded Upon Rejected Preemption Law*

As noted above, Defendant relies upon federal district court cases from the Eastern District of Michigan and one from Georgia – Ferra v. Canadian National/Illinois Central RR (opinion dated May 4, 2007); Nickels v. Grand Trunk Western RR (opinion dated May 30,

14

2007); and Crabbe v. Consol. Rail Corp. (opinion dated November 1, 2007), and the Georgia Court of Appeals case of Norris v. Central of Georgia Railroad Co.

An analysis of the Michigan federal district court cases uncovers that these cases are either factually distinguishable from the case before this Court, or more importantly improvidently relied exclusively on the Norris case as a basis for concluding that 49 C.F.R. §213.103 substantially subsumes a railroad worker's FELA claims based on improperly sized ballast.

Unlike plaintiff's claims, the Ferra district court ruling acknowledged that the plaintiff's claims in that case did not involve walkway and/or rail yard conditions. Unlike plaintiff's claims in this case, the Ferra plaintiff's claims involved mainline track ballast, not yard track ballast. There was no allegation of deficiencies involving walkways in Ferra. The Ferra district court opinion as a factual matter simply does not apply to this case.

The Ferra, Crabbe and Nickels[3] district court opinions also relied exclusively on Norris v. Central of Georgia Railroad Co., 635 S.E.2d 179 (Ga. App. 2006), as the singular legal basis for concluding as a matter of law that the FRSA, and 49 C.F.R. §213.103 in particular, substantially subsumed FELA ballast claims. The Ferra district court opinion states:

> What is determinative is whether the regulations at issue cover or substantially subsume the subject matter.
>
> To the extent that [Ferra's] FELA claim rests upon different ways by which [Defendant] might have supported the mainline track to comply with 49 C.F.R. 213.103, the negligence claim is precluded. The fact that the regulation does not specify any size for the various purposes of the ballast does not alter the fact that the regulation nonetheless "covers" or "substantially subsumes" the subject matter of a ballast selection relative

---

[3] The Nickels district court opinion relied exclusively on the district court's opinion in the Ferra case. The Nickels opinion cited no other cases to support its holding that the FRSA regulation, 49 C.F.R. §213.103, substantially subsumed the plaintiff's FELA claim. However, because the Ferra opinion relied exclusively on the Norris case, it is presumed that the Nickels district court likewise relied on the Norris case.

15

>to track maintenance. Norris, 635 S.E.2d at 183. The Court agrees with
>the reasoning in Norris.

*Id*. (quoting Norris, 635 S.E.2d at 183, fn. 20). The above passage represents the district court's sole legal basis for finding that the regulation substantially subsumed the Ferra plaintiff's FELA claims.

The Georgia Court of Appeals in Norris, however, improvidently relied upon the New York federal district court case of Tufariello v. Long Island R. Co., 364 F.Supp.2d 252 (E.D.N.Y. 2005), as its sole legal basis for concluding that the Norris plaintiff's FELA ballast claims were substantially subsumed by 49 C.F.R. §203.103. *See* Norris, 635 S.E.2d at 183.

Relying solely on Tufariello, the Georgia Court of Appeals held:

>The fact that the regulation does not specify any size for the various purposes of the ballast does not alter the fact that the regulation nonetheless "covers" or "substantially subsumes" the subject matter of a ballast selection relative to track maintenance. FN20.
>
>* * *
>
>FN20. See generally Tufariello v. Long Island R. Co., 364 F.Supp.2d 252, 259-260 (E.D.N.Y. 2005)(applicability of preemption provision in the FRSA was not altered where federal regulation concerning locomotive horns set a minimum level but did not specify a maximum level).

*Id*.

The district court's conclusions allowing preemption in Tufariello, however, was flatly **rejected** by the Second Circuit Court of Appeals in Tufariello v. Long Island R. Co., 458 F.3d 80, 85-6 (2nd Cir. 2006). A copy of Tufariello v. Long Island R. Co., 458 F.3d 80 (2nd Cir. 2006) is attached as **Exhibit 10**, and is hereby incorporated by reference as if fully set forth herein.

In Tufariello, a railroad worker brought a FELA action claiming that his employer railroad failed to provide him adequate hearing protection. The New York district court granted summary judgment for the railroad on the basis that the worker's FELA claims were preempted by FRSA regulations 49 C.F.R. §229.129, which establishes minimum sound levels for warning

16

devices on trains. The Second Circuit Court of Appeals ultimately reversed the district court's grant of summary judgment for the railroad, holding that the FRSA regulations, including 49 C.F.R. §229.129, "do not address the circumstances under which railroad employees must be provided hearing protection." *See* Tufariello, 458 F.3d at 86.

The Second Circuit's rejection of the district court's preemption ruling in Tufariello is important for 2 reasons: 1) it vitiates the sole legal basis for the Norris Court's preemption ruling, thus rendering the Ferra, Nickels and Crabbe district court holdings unsupported at law and inapplicable in the instant case; and 2) it is instructive in plaintiff's case.

As the regulation in Tufariello may have arguably loosely touched on the subject matter of the Tufariello plaintiff's FELA claim – i.e., warning sounds leading to hearing loss due to railroad's failure to provide hearing protection – so too the regulation at issue in this case may arguably loosely touch on the subject matter of plaintiff's FELA claims – i.e., dangerous walkways where ballast is located leading to knee injury. However, the Second Circuit in Tufariello reminds us that to "substantially subsume" a plaintiff's FELA claims, and thus justify the drastic remedy of precluding a railroad worker's sole avenue of recovery, requires that the regulation do more than merely touch on or concern the subject matter of the claim.

### III.   CONCLUSION

Defendant is asking this Court to effectively repeal by subsequent regulatory enactment the 100-year-old federal negligence law that is the FELA, and replace it with a 68 word federal regulation, the plain language of which evidences that it is devoted solely to a ensuring that railroad tracks are properly supported in order to prevent train derailments.

Plaintiff's FELA claims and 49 C.F.R. §213.103 are not in conflict. One (1) complements and supplements the other. Together they effectuate the overriding purpose of both

17

the FELA and FRSA – to promote rail safety and reduce railroad related injuries.  This was Congress' intent.

Allowing plaintiff's FELA claims to go forward, and denying defendant's Motion for Summary Judgment, will frustrate neither the clear and unambiguous purpose of 49 C.F.R. §213.103, nor the purpose of the FRSA regulations in general – national uniformity of railroad safety laws to the extent practicable.

Defendant's Motion for Summary Judgment should be denied.

<div style="margin-left:2em">

SCHLICHTER, BOGARD & DENTON

_____/s____Andrew S. Williams _____
NELSON G. WOLFF Fed#37998;Ark. #2006002
ANDREW S. WILLIAMS, MO #41947
100 South Fourth Street, Suite 900
St. Louis, Missouri  63102
(314) 621-6115
(314) 621-7151 (fax)

And

Edward T. Oglesby ABN 89158
Suite 110 Morgan Keegan Bldg.
100 Morgan Keegan Dr.
Little Rock, AR  72202
(501) 664-1000   Fax (501) 644-1012
edward@oglesbylaw.com
ATTORNEYS FOR PLAINTIFF

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of January, 2009 a true and correct copy of the above was filed electronically and delivered by United States First Class mail with postage prepaid to the following:

Scott H. Tucker
Friday, Eldredge & Clark
400 W. Capitol Ave.  Ste 2000

Little Rock, AR  72201
Telephone:  501-376-2011
Fax: 501-376-2147

        /s    Andrew S. Williams